JENNIE C. JOHNSON v. PILLSBURY FLOUR MILLS COMPANY.[1]

November 25, 1932.

No. 29,053.

[1]Reported in 245 N. W. 619.

*W. C. Preus* and *Daniel Carmichiel,* for relator.

*Snyder, Gale & Richards,* for respondent.

HOLT, J.

Certiorari to review a decision of the industrial commission adverse to relator.

Relator, an employe of respondent, received an accidental injury arising out of and in the course of his employment on July 25, 1926. Respondent recognized its duty under the workmen's compensation act, paid relator compensation, and also paid the doctor and hospital for caring for him. On December 10, 1926, when relator returned to work the compensation payments ceased. July 16, 1927, relator claims he had to quit work because of the effects of the injury. He made application to the commission for additional compensation in September following. A hearing was had, and on December 22, 1927, a referee awarded compensation for a further period of disability. On respondent's application a further hearing was had by the referee, and other findings awarding compensation were filed in February, 1928. Respondent appealed from the referee's finding, and a hearing thereon before the commission was had in June. On July 21, 1928, a decision was filed from which it appears that during the hearing the commission suggested to the parties, relator being represented by an attorney, that they settle upon a lump sum basis. They acceded to the suggestion and by stipulation agreed to settle for the lump sum of $2,000. Thereupon the commission considered and determined that relator be awarded $2,000 compensation, in addition to that paid, "in full of all compensation benefits arising out of the accidental injury of said employe on the 25th day of July 1926." The award was paid, and a general release was executed by relator to respondent.

Thereafter, in November, 1928, relator filed another petition to set aside the settlement, on the ground that he did not know that the lump sum settlement was a final discharge of the employer.

This time a different attorney appeared for him. A hearing was had, and on December 15, 1928, the commission filed an order denying the petition. It appears that at this time relator's mental condition was a subject of inquiry. Thereafter, in November, 1929, by different attorneys, relator petitioned for additional compensation on the ground that he was neurotic or mentally affected because of the injury of July, 1926. After a hearing the commission denied the petition by order of November 13, 1929. Relator obtained a writ of certiorari from this court to review the order. After extensions of time to serve brief and record, the writ was discharged on motion of respondent on December 2, 1930. In that same month relator's wife was appointed guardian of her husband, and by the present attorneys, who had not before appeared in the matter, another petition was filed January 15, 1931, to vacate and set aside the settlement and award and for additional compensation on the ground that "simple dementia" had developed from the injury. The commission made an order referring the whole matter involved in the petition and answer to a referee, to hear any evidence offered by the parties and make findings "relating only to the issue of whether the mental disability of the employe is the result of the accidental injury involved in this proceeding." The hearing was had, both parties calling medical experts. On June 8, 1931, the referee filed his findings: "That the total permanent loss of mental faculties from which the employe is now suffering was not the result of the accidental injury suffered by him on July 25, 1926," and denied the petition. The commission on appeal affirmed the order of the referee.

Respondent contends that the general release executed on payment of the lump sum settlement bars any further claim for compensation. It is questionable whether the ordinary settlements and releases are applicable to injuries received by an employe under the workmen's compensation act. G. S. 1923 (1 Mason, 1927) § 4285, governs and does not contemplate a common law release. It is conceivable that the commission considered that this settlement was not in accordance with the statute, for the compensation payable

periodically was undetermined and pending on appeal before the commission when the settlement was effected. The lump sum award is to be calculated on the determined periodic compensation.

We do not think the fact that a writ of certiorari was issued on December 12, 1929, deprives the commission of jurisdiction of the employe's compensation after dismissal of the writ without a hearing or determination in this court.

On the merits, there is no doubt that the employe is now affected to such an extent that he is permanently disabled to engage in any gainful occupation. The doctors call it simple dementia. The commission found this mental condition did not come from the accident he sustained on July 25, 1926. The finding is vigorously attacked as contrary to the evidence or as without adequate support.

The employe was raking out debris which gathers in front of the screen of a turbine in the canal to the Palisade mill. The handle of the rake broke, and he fell backward to the bottom of the canal, a distance of about 18 feet. There was about a foot of silt or mud and water over the rock bottom of the canal where he lighted. His left wrist was fractured, also the fifth lumbar vertebrae, some injury to the sacroiliac joint, and a fracture of a pubic bone, which healed well. There was no visible injury to his head. He remained conscious. In the petitions and hearings had prior to the lump sum settlement there was some claim of loss of hearing in the left ear and a suggestion of nervous disturbance. But during one week in May, 1928, several months before the lump sum settlement was approved, he was "in delirium," as his wife testified. The attending physician at this time confirms this claim of the wife. She at the last hearing testified that her husband exhibited a progressive mental deterioration from the beginning, such as jerking in his sleep, irritability, forgetfulness, and the like.

Relator's medical experts were of the opinion that his mental condition was the result of the fall, surmising that on account of sclerosis the minute blood vessels in the brain became fragile and broke with the shock the body received in the fall; that such break-

ing interfered with the circulation in the surrounding brain tissues, thus causing deterioration or softening of the brain, producing insanity. The employe was past 53, and at an age when many become afflicted with hardening of the arteries to a greater or less extent.

On the other hand, the medical experts of respondent were of the opinion that the accident did not cause any change in his mental condition and that his dementia is not traceable to the accident. Medical experts on both sides are specialists of standing and experience, and they adduce plausible reasons for the opinions expressed.

But relator's counsel urges that as against the testimony of the wife, who actually saw and observed her husband's condition from day to day, the experts' opinions should be disregarded; especially should the opinions of the medical experts of respondent, who refused to consider true the history given them by the wife or her testimony, be of little or no weight. We do not think it appears that these experts disregarded the history or testimony of the wife as to her husband's condition. In our view it seems that they, as honestly as the experts of the relator, based their opinion upon all the evidence. In that connection it is to be remembered that the commission had before it the testimony of the employe taken before the referee, beginning November 14, 1927, nearly a year and four months after the accident. It will be difficult for anyone reading that testimony to detect any trace of abnormality or mental deficiency of the witness. His testimony demonstrates that the wife's testimony of the gradual deterioration of his mind from the date of the accident is not to be taken at its face value. Moreover, reputable experts examined him and took his history in the late summer and fall of 1927, and none discovered any mental defect. One only suggested that he displayed some nervousness or excitability, but explained that physical pain does cause such a condition. The wife in her testimony of November 14, 1927, did not suggest the appearance of any symptoms of simple dementia. So there is some foundation for the conclusion of respondent's experts that the interval between the accident and the development of the psychosis

is too long to permit an inference of any connection between the two. It would serve no useful purpose to state the different theories of the medical experts accounting for the origin of relator's dementia or insanity. We all know that persons who have experienced no accident become insane; and in many instances the cause of their misfortune remains hidden to the best of medical experts.

We have always given the workmen's compensation act a liberal construction so as to assure to the employe and his dependents the protection intended. But when it comes to a question of cause and effect, the conclusion must be left with the commission. It was well said in Conway v. Swift & Co. 175 Minn. 42, 43, 219 N. W. 944:

"A preponderance of medical testimony does not prevent a trier of fact from reaching a conclusion at variance with the expressed medical view. Proof sufficient to satisfy a scientific medical test is not required."

However, if all the medical testimony is laid aside, we have here the testimony of the employe and his wife, given more than a year after the accident, suggesting no symptom of mind deterioration, thus contradicting her testimony at the last hearing that there were aggravated symptoms almost immediately following the accident. Therefore, all the testimony must be considered; and when that is done there is room for reasonable minds to come to different conclusions, and a case arises where an appellate court cannot disturb the finding made by the trier of fact. In so doing we do not depart from what was said in Hertz v. Watab Paper Co. 180 Minn. 177, 230 N. W. 481, and in the same case in 184 Minn. 1, 237 N. W. 610, for in both the rule is emphasized that it is the duty of the commission to determine the fact, whether or not a disability arising after an accident is traceable to an injury then received; and where there is a conflict in the testimony as to cause and effect the commission's finding cannot be disturbed by this court. Jones v. Excelsior Laundry Co. 183 Minn. 531, 237 N. W. 419. There can be no claim that the commission acted on a wrong theory of the law as it did in the early hernia cases. The commission did not consider the employe concluded because of the lump sum settlement, or be-

cause of any omission or failure earlier to discover the effect of the accident on the mind. For, brushing aside technical objections, it granted a full hearing on the single issue whether or not his present permanent mental disability is the result of the accident of July 25, 1926. That we would have been better satisfied with a contrary finding does not signify, for we are satisfied that the record supports the finding made. Whether there was an unbroken causal connection between the accident and the employe's insanity was for the commission to say. The evidence cannot be said to be without conflict on that proposition. Nor can it be said as a proposition of law that the finding is against the weight of evidence. The writ must be discharged, and the decision stands affirmed.

