MARGARET I. FEHLAND, EXECUTRIX, SUBSTITUTED FOR JOHN FITZPATRICK, DECEASED, v. CITY OF ST. PAUL.[1]

April 22, 1943.

Nos. 33,389, 33,395.

[1]Reported in 9 N. W. (2d) 349.

96

*Harry W. Oehler,* Corporation Counsel, and *Francis M. Smith,* Assistant Corporation Counsel, for city of St. Paul.

*Bernice Callinan, Homer Gannaway,* and *Reynolds & McLeod,* for Margaret I. Fehland as executrix.

JULIUS J. OLSON, JUSTICE.

*Certiorari* brings for review an order of the industrial commission awarding the representative of the deceased employe's estate reimbursement for expenses incurred and paid by the employe in his effort to secure relief from the effects of his occupational accidental injury.

This cause originally was heard by this court on November 12, 1942. On December 21, 1942, on our "own motion," we "ordered that a reargument be had on all issues with special reference to the right to make an award to the executrix" of decedent's will. In compliance therewith, counsel have provided us with additional briefs, and on March 15, 1943, we heard their further arguments.

On December 24, 1929, John Fitzpatrick, for many years an employe of the city of St. Paul, sustained an accidental injury arising out of and in the course of his employment. He was taken immediately to Ancker Hospital and remained there until July 26, 1932, when he made a brief trip to Ohio to attend the funeral of his sister. Upon his return from that trip about a week later he applied for readmittance, but this was refused, apparently on the ground that it was thought he no longer needed medical attention or hospital care. From then on he lived at private homes until

April 25, 1936. On that date he fell as the result of his crippled condition. This time he was taken to St. Joseph's Hospital, where he remained until January 3, 1941. He there received medical and hospital care and attention during this entire period. He himself paid these expenses, amounting to $3,153. On January 3, 1941, he went to live with Mrs. Fehland and there remained until his death on March 13, 1942. She is now the executrix of his will and a party to this cause. Under the arrangement made by him with Mrs. Fehland, he paid her $60 per month plus such additional amounts for medicines and the like as were needed. The findings of the commission were that the services bargained for and rendered under this arrangement were reasonable in amount and necessary to relieve him from the effects of his original injury. That injury was found by the commission to be "an intracapsular fracture of the hip, complete bony absorption, no callus formation, and a permanent non-union, necessitating the use of crutches and cane."

That Fitzpatrick's injuries were such as permanently and totally to disable him no one questions. The city so recognized his case, for it has made weekly compensation payments up to the statutory maximum of $10,000. In addition, it also took care of his medical and other needed expenses until April 25, 1936.

On December 18, 1941, Fitzpatrick filed a petition with the commission asking that he be reimbursed for medical and hospital expenses incurred subsequent to April 25, 1936. A referee was appointed, who heard the testimony and awarded him $4,125, the amount found to have been necessarily expended for hospital, orderly, and practical nursing care, including medicines, from April 25, 1936, to March 2, 1942. The referee's original award was made March 4, 1942, and later amended on March 10, 1942. On April 7, 1942, the city attempted to appeal from the award to the industrial commission. In the meantime, however, Mr. Fitzpatrick had died. Mrs. Fehland was appointed executrix of his will on April 28, 1942, and she promptly stepped into the case in her representative capacity.

■ The executrix moved for dismissal of the city's appeal from the award of the referee to the industrial commission on the ground of defects in the notice and service of the appeal. The commission decided against her contentions on the theory that the case was and had been within its jurisdiction at all times since the original proceedings were brought and that such jurisdiction remained with it to finality. She brings the question here for our determination by *certiorari*. We think that issue need not be gone into, since it is apparent that, if the city's appeal was ineffective, the decision of the referee in her favor will stand. If the commission's jurisdiction is sustained the same result is reached, since the commission by an equal division of its functioning members sustained the referee. The problem has been solved by decision here in the recent case of Barlau v. Minneapolis-Moline P. I. Co. 214 Minn. 564, 9 N. W. (2d) 6.

■ With regard to the city's claim that lapse of time has relieved it from the charges here sought to be imposed, it is sufficient to say that this question too has been disposed of by our cases. Thus, in Johnson v. Iverson, 175 Minn. 319, 327, 221 N. W. 65, 222 N. W. 508, we held that by L. 1923, c. 300, § 6, L. 1919, c. 354, was amended so that "no limitation" is placed "upon the amount to be allowed" for medical, surgical, and hospital expenses an employer is required to furnish an injured workman "except the necessity and reasonableness thereof."[2] And in Kummer v. Mutual Auto Ins. Co. 185 Minn. 515, 518, 241 N. W. 681, 682, we held that the industrial commission may grant a rehearing on the propriety of further allowance of medical benefits necessitated by the original injury and that there is no statute "limiting the time when the industrial commission may on application grant a rehearing on the propriety of further allowance of medical benefits necessitated or occasioned by the original injury."

■ We have carefully examined the record in respect to the sufficiency of the evidence to sustain the findings of the triers of

---

[2]The section as amended now appears as Minn. St. 1941, § 176.15 (Mason St. 1927, § 4279).

fact. From such examination we think that there is no reason to doubt that all the charges made and the expenses incurred, as determined below, were proper and necessary. Equally apparent is the fact that the city had ample notice of Mr. Fitzpatrick's physical helplessness and his need of constant medical treatment and hospital services.

■ The only problem which has caused us difficulty is that relating to the propriety of making the award payable to the employe's legal representative.

Under Minn. St. 1941, § 176.11(f), (Mason St. 1927, § 4274[f]), it is provided that "accrued compensation due to the deceased prior to death, but not paid, *shall be payable to such dependent persons or legal heirs as the industrial commission may order* without probate administration." (Italics supplied.) This is a direct authorization to the commission to determine who "such dependent persons or legal heirs" are. The plain purpose is to place the deceased workman's dependents where they may. receive the benefits theretofore derived from him before that support was taken away from them. We should not lose sight of the following fact:

"The [compensation] act creates new substantive rights and is not a mere amendment of the common law. It goes far beyond merely affording new remedial. rights for old substantive rights. It works a fundamental change in the obligations of employers to their employees. The right to compensation given by the act is independent of fault. It is not based on tort, but is of a contractual nature. A basic thought underlying the act is that the business or industry affected shall in the first instance pay for accidental injuries as a business expense or a part of the cost of production." 6 Dunnell, Dig. & Supp. § 10385.

*Cf.* Lewis v. Connolly Contracting Co. 196 Minn. 108, 264 N. W. 581, where we held that the workman could not during his lifetime, by settlement with his employer or the latter's insurer, deprive his dependents of the rights given them by the statute.

Our reason for so holding was that (196 Minn. 112, 264 N. W. 583):

"Compensation follows as a matter of course both as to injuries for which the injured employe is entitled to compensation and as to compensation for death to which the dependent or dependents are entitled, whether the employer was negligent or free from negligence. The employer and insurer are liable not on the ground of wrongful death or negligence, but in the nature of contract liability by coming within and being subject to the provisions of the compensation law."

In that case we also pointed out certain distinctions between the compensation act and the death by wrongful act statute, saying (196 Minn. 114, 115, 264 N. W. 584):

■ "The distinctions between a proceeding under the workmen's compensation law by the dependent or dependents to recover compensation for death of an employe and an action for wrongful death under [Minn. St. 1941, § 573.02, Mason St.] § 9657 of the statute are quite clear. In a wrongful death case there must be tort or negligence on the part of the employer. Under that law the measure of damages is the monetary loss to the heir or heirs of the decedent. The action can be brought only by the administrator or executor of the decedent's estate. *Under the workmen's compensation law the compensation is based on the wage of the decedent at the time of his death, and a definite proportion of such wage is awarded, depending on the degree of dependency and the relationship of the dependents to the deceased employe.* \* \* \* It follows that under the compensation law the award of compensation for death, being based on the dependent's weekly wage at the time of his death and payable at the intervals when the wage was payable, *is not a definite total amount as in a wrongful death case, but the final amount to be paid depends upon future contingencies.*" (Italics supplied.)

■ We have discussed dissimilarities between the workmen's compensation act and the death by wrongful act statute. Yet the

underlying purpose of both acts is to provide something in the way of relief or compensation to those who have been injured by the untimely death of one to whom they were accustomed to look for sustenance and support. Both provide for rights and remedies unknown to the common law and are purely of statutory origin. As pointed out in Schwarz v. Judd, 28 Minn. 371, 372, 10 N. W. 208, 209, an action under the death by wrongful act statute:

"The theory of the statute is that they [the widow and next of kin] have a pecuniary interest in the life of the deceased, and its object is to compensate them for their loss caused by his death. As their pecuniary loss is the sole measure of damages, so the satisfaction of that loss is the sole purpose for which the right of action is given. * * * Under our statute, the damages which may be recovered are designed as a compensation or indemnity to certain persons, and not to the general estate, and therefore the fact that there are persons entitled to this indemnity, must be both alleged and proved in order to warrant a recovery. An allegation, therefore, that deceased left a widow, or next of kin, who are entitled to compensation, is both material and necessary." (Citing cases.)

■ Under the wrongful death statute, Minn. St. 1941, § 573.02 (Mason St. 1940 Supp. § 9657), no part of the recovery goes to the decedent's estate, and it is no part of it. Recovery is for the exclusive benefit of the "surviving spouse and next of kin." And the widow may not even select her statutory allowance out of the amount so recovered under the statute of descent. Distribution is made under the jurisdiction and direction of the district court in which the recovery is had. The probate court has no jurisdiction. The element of dependency is not involved, but the element of pecuniary loss is. 2 Dunnell, Dig. & Supp. §§ 2609, 2610. In point is Masek v. Hedlund, 162 Minn. 291, 202 N. W. 732, where our prior cases are cited.

■ As far as original probate jurisdiction goes to determine heirship or who may be entitled to take as beneficiaries under a

will, both the district court and the industrial commission are equally without constitutional power. Under Minn. Const. art. 6, § 7, that lies wholly with the probate court. As we have seen, under our decisions recovery of damages under the death by wrongful act statute is no part of the decedent's estate; therefore there is nothing under that act requiring, or even permitting, the exercise of probate jurisdiction. Are benefits accruing to a workman under the compensation act but not collected during his lifetime to be placed in a different category? A brief review of the history and general background of that act leads to the view that the question requires a negative answer, for, as we shall show, such a fund does not become a part of the decedent's estate.

Under the compensation act as originally drafted, no provision was made for the disposition of compensation benefits accruing to the employe but not paid at the time of his death. In that situation, as cases from other jurisdictions well establish, the representative of the decedent's estate was entitled to such fund. Western Ind. Co. v. State Industrial Comm. 96 Okl. 100, 219 P. 147, 29 A. L. R. 1419; Greenwood v. Luby, 105 Conn. 398, 135 A. 578, 51 A. L. R. 1443; Stetu v. Ford Motor Co. 277 Mich. 468, 269 N. W. 236. And that, too, was the holding of the commission in Sobczak v. City of Duluth, 2 W. C. D. (Minn.) 330, where it was said that such "had been a common practice, supported by an opinion of the Attorney General's office."

By L. 1923, c. 300, § 3, it was provided that "accrued compensation due to the deceased prior to death, but not paid, shall be payable to such dependent persons as the Industrial Commission may order without probate administration." Again, the act was amended by L. 1925, c. 161, § 2, so that to the words "dependent persons" were added "or legal heirs." The provision now appears as Minn. St. 1941, § 176.11(f), (Mason St. 1927, § 4274[f]).

We think the legislative history plainly indicates the legislative purpose that such accrued compensation is not to be distributed by the laws of inheritance or under the will of the deceased employe, but that the persons entitled to receive the same on the em-

ploye's death are those enumerated in the statute. The *dependents* of the workingman are the ones whom the legislature sought to protect. Obviously, the determination of who shall take lies within the legislative field. From that source we are directed, specifically and unequivocally, to leave with the commission the distribution of the fund "without probate administration." This simply means that the compensation goes directly to those designated by the act. For these reasons, we think that the general rule followed in other jurisdictions is inapplicable under our act. Section 176.11(f) was enacted to avoid the application of that general rule, and we should obey the legislative direction. It reaches a desirable result, in that the delay incident to probate proceedings is thereby avoided. It removes the possibility that the deceased employe's creditors may share in accrued benefits. Its purpose is consistent with the general provisions of the act, that claims against compensation benefits shall be exempt from seizure or sale for the debts or liabilities of the deceased worker. See *Id.* § 176.23 (§ 4287).

■ "Accrued compensation" as used in § 176.11(f), (§ 4274[f]), obviously includes such claims as those here presented. Under *Id.* § 176.01, subd. 2 (§ 4326[a]), "compensation" is defined as "money benefits to be paid on account of injury." This is sufficiently comprehensive to cover the claims for reimbursement here made.

■ Another argument advanced in support of the executrix's right to take the involved fund is that the commission is not so constituted as to make it the proper authority to determine who are a decedent's "legal heirs." The same argument applies with equal force to the district court's lack of constitutional power initially to determine a decedent's "next of kin." The fallacy of the argument is that it overlooks the fact that such funds are not a part of a decedent's estate, therefore probate jurisdiction does not come into play. That was the view of this court in Tierney v. Tierney & Co. 176 Minn. 464, 467, 223 N. W. 773, 774, where we

said (by way of dictum but nonetheless a correct interpretation of the law):

"Under this provision [§ 176.11(f)] even the instalments which had accrued prior to the death of the workman and remained unpaid do not become a part of his estate nor vest in his dependents, but are to be paid to such dependents or heirs as the commission shall order without probate proceedings."

The right of recovery as determined below is sustained, but the cause is remanded to the commission to ascertain and determine who are the "dependent persons" or "legal heirs" of Mr. Fitzpatrick.

So ordered.

