# BENJAMIN SENSKE v. FAIRMONT & WASECA CÁNNING COMPANY AND ANOTHER.
# JULIUS A. SCHMAHL, STATE TREASURER, AS CUSTODIAN OF SPECIAL COMPENSATION FUND.[1]

January 5, 1951.

No. 35,360.

---

[1]Reported in 45 N. W. (2d) 640.

*Moonan, Moonan & Friedel* and *Gallagher & Madden,* for relator.

*Shepley, Severson & Johnson,* for respondents employer and insurer.

*J. A. A. Burnquist,* Attorney General, and *Victor H. Gran,* Assistant Attorney General, for respondent Julius A. Schmahl.

MATSON, JUSTICE.

Certiorari to review an order of the industrial commission deny-

ing a petition for approval of a lump-sum settlement based upon a stipulation entered into by the employe-relator, the employer and its insurer, and the state treasurer as custodian of the special compensation fund (hereinafter called the special fund).

On or about December 1, 1944, relator sustained certain injuries in his employment. The employer and insurer have paid compensation to relator at the rate of $20 per week for 50 weeks of temporary total disability and for 130 weeks on the basis of a 65 percent permanent partial disability of the right leg, and for $61\frac{1}{4}$ weeks on the basis of a 35 percent permanent partial disability of the right hand and wrist. The compensation payments total $4,825 for an aggregate period of $241\frac{1}{4}$ weeks at $20 per week. In addition, the employer and insurer have paid $908.25 for medical and hospital expenses and have made a contribution of $41.50 to the special fund. Pursuant to a notice of proposed discontinuance, no further payments have been made.

On December 29, 1949, relator filed a petition for compensation on the basis of *total and permanent disability*. Although it is admitted that relator's injuries arose out of and in the course of his employment, the employer and its insurer deny further liability on the ground that relator has been paid all benefits to which he is entitled. Subsequently the state treasurer, as custodian of the special fund, became a party to the proceeding. On May 15, 1950, a stipulation for a lump-sum settlement was executed by relator, the employer and its insurer, and the state treasurer as custodian of the special fund, whereby employe agreed to accept $2,750 from the employer and its insurer and $1,750 from the special fund in full and complete settlement of all claims. Relator's contentions, as set forth in the stipulation, are that as a result of his injuries he sustained a minimum of a 75 percent permanent partial disability of his right leg and hip and not less than 40 percent of the right hand and wrist, and that such injuries, *in combination with a previous disability*, have produced *a permanent total disability*. The employer and its insurer contend that his employment injuries did

not result in more than a 65 percent permanent total disability of the right sacroiliac joint and right leg and not more than 35 percent permanent partial disability of the right hand, inclusive of wrist movement, and that relator is able, subject to such disability, to perform a substantial part of some gainful employment with reasonable continuity. The employer and the insurer further assert that relator has been compensated for all disabilities sustained, and that if he is now permanently and totally disabled as a result of a combination of his injuries with a previous disability, *such previous disability was not aggravated or accelerated by his employment injuries.* The custodian of the special fund denies that relator had a previous disability and contends that any disability now existing is the sole result of the injuries sustained in the employer's employment, and further asserts that relator is now able to perform a substantial part of some gainful employment with reasonable continuity, and that he is therefore not totally permanently disabled.

On June 30, 1950, the industrial commission denied plaintiff's petition for approval of the stipulated lump-sum settlement and referred the matter to the referee for a determination on the merits. Upon review, the following issues arise:

(1) Has the state treasurer as custodian of the special fund (created pursuant to M. S. A. 176.13) any discretionary control, by stipulation or otherwise, over the payment of total disability benefits from such fund?

(2) Is a claim for total disability benefits against such special fund a claim against the state which may be compromised and settled by the attorney general?

(3) Was the industrial commission's denial of relator's petition for approval of the lump-sum settlement an abuse of its discretion?

Although the industrial commission has not disclosed by memorandum, or by any presentation pursuant to § 176.64, the basis for

its order of denial, we shall assume that such order was made upon the merits and not because of any possible breach of its rules.[2]

■ What significance is to be attached to the act of the custodian in stipulating for the payment of a lump sum in final settlement of a claim for total disability benefits from the special fund? What is the nature of the custodian's duties and obligations? Section 176.13(2) provides:

"The state treasurer shall be the custodian of this special fund and *the industrial commission shall direct the distribution thereof,* the same to be paid as other payments of compensation are paid." (Italics supplied.)

By the wording of the statute, it is quite clear that the state treasurer as custodian is possessed of no discretionary power over the disbursement of total disability benefits from such fund, but is vested only with the ministerial duty to disburse its proceeds *as directed by the industrial commission.* See, Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. (2d) 598. That his duties are strictly ministerial is emphasized by a further provision of the same section which provides that if any deposit in, or payment to, the fund is made by mistake or inadvertence any refund thereof is subject to order of the commission. See, also, § 176.20. Any attempt of the custodian, therefore, by stipulation or otherwise, to control the disbursement of disability benefits from the special fund is but an empty and meaningless gesture. Whether total disability benefits are to be paid out of the fund rests solely in the sound discretion of the industrial commission, which by statute is directed to pay such benefits *as other payments of compensation are paid.* (See § 176.13[2], above quoted; Loew v. Hagerle Brothers, 222 Minn. 258, 24 N. W. [2d] 278.) It must not be assumed, however, that because his ministerial role gives him no discretionary control over the payment of disability benefits that he does not have, by virtue of the inherent

[2]Litigants who appear before an administrative agency should take notice that the rules adopted by such agency, pursuant to § 15.042, may possibly have the force and effect of law.

nature of his custodianship, a right and a duty, for the preservation of the fund, to resist disbursements and invasions which have no basis in law. Loew v. Hagerle Brothers, 226 Minn. 485, 33 N. W. (2d) 598.

■ Furthermore, it is erroneous to assume that an employe's claim for total disability benefits from the special fund is in the nature of a claim against the state which may be compromised and settled by the attorney general, or to assume that the attorney general's recommendation of such a compromise is a material factor in ascertaining whether the industrial commission has abused its discretion in declining to approve such a settlement. In the first place, an injured workman's right to total disability benefits from the special fund is not based upon any direct financial obligation of the state. (See, 31 Harv. L. Rev. 619, 621.) The fund is a "public fund" only in the sense that the public welfare is highly involved with its proper administration. The fund is not derived from taxation, but from lump-sum contributions and penalties paid by all compensation-paying employers and insurers. § 176.13(2); Loew v. Hagerle Brothers, 226 Minn. 485, 488, 33 N. W. (2d) 598, 601. Contributions to the fund are made by compensation-paying employers *generally* to defray an industrial burden for which they are deemed collectively responsible. In recognition of this industrial responsibility, the enforcement of which is for the public welfare, the state in effect says:

"We, as a public trustee acting through the industrial commission, will establish, collect, and administer such fund for the protection of workmen against the hazards of employment and for the protection of society as a whole from disability burdens which belong to industry itself as a cost of production."

It is a fund which belongs to industry, in which the state has no interest other than its proper administration. See, Chez v. Industrial Comm. 90 Utah 447, 62 P. (2d) 549, 108 A. L. R. 365; State ex rel. Beebe v. McMillan, 36 Nev. 383, 136 P. 108; 58 Am. Jur., Workmen's Compensation, § 554. By its very nature and purpose, such a

publicly administered fund falls into a different classification from that of other funds which are directly owned by the state and which are derived from public revenues. If total disability claims are to be subjected to compromise and settlement in the ordinary and narrow sense of whether the settlement is advantageous in preserving the fund's dollar volume, the very purpose for which it exists may be defeated. A financially advantageous bargain for the fund may result in an unfair and improvident settlement for the disabled workman; in consequence thereof, he may be thrown upon the scrap heap of charity and become a public burden. If the fund's purpose is to be realized, it must be so administered that the burden of employment disability remains with industry and is not transferred to the public. See, Breimhorst v. Beckman, 227 Minn. 409, 430-431, 35 N. W. (2d) 719, 732-733; Loew v. Hagerle Brothers, 226 Minn. 485, 488, 33 N. W. (2d) 598, 601; Hanley v. Mulleneaux (Md.) 65 A. (2d) 325.

■  Clearly, control over the allowance of disability benefits from such publicly administered special fund is wholly vested in the industrial commission, and no other official or department, in behalf of the state or in behalf of anyone else, has such ownership in, or supervision over, the fund as to empower them to compromise disability benefits or to make recommendations which are a material factor in the exercise of the industrial commission's discretion. The attorney general may properly appear in workmen's compensation cases in behalf of the custodian insofar as that official's purely ministerial function is concerned. The state has a direct interest in seeing that its public officers are, where reasonably necessary, adequately represented by counsel in the performance of their duties *within the scope of their authority.* § 8.06. This was further recognized by the legislature with respect to the quasi-judicial duties of the industrial commission when by § 176.64 it provided that upon a review of its orders by this court the attorney general shall, *unless otherwise directed by the commission,* appear as attorney for the commission in support of its awards or orders. The purpose

of this provision is obvious. If any party to a workman's compensation proceeding seeks a review of the commission's decision, such review, as a matter of sound public policy, should not be heard as a default matter. In the performance of his official duties, the opinions and recommendations given by the attorney general to the industrial commission—or to any other body or department—are entitled to the greatest respect, but such opinions and recommendations cannot control or become a material factor in the exercise of the commission's discretion as to the allowance or denial of disability benefits. Whether the commission has exercised a sound discretion is to be ascertained wholly in the light of the facts of each case.

■. Although the stipulation insofar as the custodian of the special fund is concerned was wholly ineffectual, relator's petition in connection therewith may be treated as an application for a lump-sum allowance out of the special fund to supplement the proposed lump-sum settlement as stipulated between relator and the employer and its insurer. Assuming that the liability of the special fund for total disability benefits has been established, there can be little doubt that compensation benefits periodically payable from such fund may, in a proper case, be commuted to one or more lump-sum payments. Section 176.13, as hereinbefore noted, provides that the special fund benefits are to be paid as other payments of compensation are paid. Section 176.21 specifically authorizes the commutation of such other compensation payments.[3]

■ We come therefore to a consideration of whether the commission exercised a sound discretion in denying approval of the lump-sum settlement between the parties and in denying an allowance of a supplementary sum out of the special fund. The only authorization for a settlement of disability benefits by stipulation of the parties is found in § 176.69, which has for its original derivation L. 1935, c. 313, § 1. We have no decisions based on the above

---

[3] As to the meaning of the word "compensation" as used in connection with the special fund, see Loew v. Hagerle Brothers, 222 Minn. 258, 24 N. W. (2d) 278.

section.[4] It provides that a written and signed stipulation of the parties for the settlement of disability compensation, if it does not purport to establish such finality of settlement as to preclude a reopening of any award thereon under § 176.60, and if it is made subject to the approval of the industrial commission and in conformity with the compensation act, *except as to amount,* and further if it is fair and reasonable, may be approved by the industrial commission and given validity by the making of an award thereon. Whether the proposed settlement shall be approved or disapproved rests in the discretion of the commission, and the burden of showing that it is fair and reasonable *and in conformity with the workmen's compensation act,* except as to amount, rests on the parties.[5]

---

[4]Decisions based on prior statutes which have since been repealed, or which were handed down prior to the enactment of L. 1935, c. 313, § 1, when the workmen's compensation act was silent as to agreements of settlement—except as to the prohibition found in Mason St. 1927, § 4269, against agreements to take as compensation an amount less than that prescribed by law—can scarcely be considered controlling. Both Worwa v. Minneapolis St. Ry. Co. 192 Minn. 77, 255 N. W. 250, and Ruehmann v. Consumers Ice & Fuel Co. Inc. 192 Minn. 596, 257 N. W. 501, 96 A. L. R. 1015, were handed down in 1934, and both in part involved Mason St. 1927, § 4269, which latter section was repealed by L. 1937, c. 64. Johnson v. Pillsbury Flour Mills Co. 187 Minn. 362, 245 N. W. 619, was handed down in 1932. In the latter case, it is interesting to note that the court, although the compensation act was then silent as to settlements, except as to the provision found in Mason St. 1927, § 4269, stated that Mason St. 1927, § 4285 (now M. S. A. 176.21), *governed and did not contemplate a common-law release.* In enacting § 176.69, the legislature clearly intended that no settlements, other than those made in compliance therewith, should have validity. See, 58 Am. Jur., Workmen's Compensation, § 390. It is generally recognized that compensation laws are in derogation of the common law; as such they are not supplemental, cumulative, amendatory, or declaratory of the common law, but wholly substitutional of it. See, 1 Schneider, Workmen's Compensation (Perm. ed.) § 6; Fehland v. City of St. Paul, 215 Minn. 94, 99-101, 9 N. W. (2d) 349, 352-353.

Note that L. 1913, c. 467, § 22, and amendments thereof, were repealed by L. 1921, c. 82, § 70.

[5]As to workmen's compensation settlements generally, see Annotation, 153 A. L. R. 285.

■ We have no indication of the basis for the commission's order denying approval of the stipulated settlement. A number of possible grounds may have been involved. Obviously, relator was willing to accept the settlement *only* if he received a $1,750 grant from the special fund. As to the actual liability of the employer, without giving the slightest consideration as to whether the employe might qualify for further benefits from the special fund, was the settlement for a lump sum fair and reasonable and in conformity with the compensation act except as to amount? Did the stipulation reasonably show that relator, by reason of a prior disability, had sustained *a combined disability which was both permanent and total so as to qualify him for special fund benefits?* Pursuant to a liberal construction of the compensation act, if an award is once made on a properly approved settlement, such an award may be considered as establishing that the employe's right to compensation for which the employer alone is responsible has been exhausted, and to provide, therefore, the necessary prerequisite to a consideration of whether the employe is entitled to receive further benefits from the special fund by reason of a combined disability which is both permanent and total.

■ In adjudging whether a lump-sum settlement is fair and reasonable, the commission must keep in mind the welfare of the employe. Although he is not entitled to any undue advantage, a settlement which is improvident for him is not fair and reasonable. His welfare, furthermore, is closely related to that of the public interest. Whether a settlement is provident or improvident depends on a variety of factors according to the circumstances of each case.[6] Broadly speaking, if a lump sum is paid, consideration should be given to whether it is reasonably likely that the proceeds will be used effectively to accomplish the purpose of the compensation act or whether they will be diverted to some other purpose. Commutation, or payment in a lump sum, although authorized by

---

[6]See interesting discussion in re lump-sum settlements by G. L. Coffinberry in 19 Ohio Bar Assn. Report, 527; Perry v. W. L. Huffman Auto. Co. 104 Neb. 211, 175 N. W. 1021, 179 N. W. 501.

statute, is a departure from the normal mode of periodic payment of disability benefits as contemplated by the compensation act, and should be allowed only with a cautious regard for the welfare of the employe and the protection of the public. See, Miller v. Schlereth, 151 Neb. 33, 36 N. W. (2d) 497. In some cases, the commission may possibly find that a lump-sum payment has therapeutic value from a neurological standpoint. In others, the award of a lump sum may serve to rehabilitate the individual if the amount thereof is large enough to enable him, in the light of his education, native intelligence, age, and experience, to become established in the pursuit of other and lighter work. Where there is a bona fide uncertainty as to whether the employe's injuries arose out of and in the course of the employment, or doubt as to the extent or duration of his consequent disability, such uncertainty may justify a settlement— whether for a lump sum or for a series of periodic payments—as fair and reasonable, although the amount thereof is less than what would otherwise be regarded as provident. In any event, it is clear that compensation settlements, as authorized and limited by § 176.69, are compatible with the public welfare and in the interest of all parties concerned, inclusive of that of the disabled employe, and should be favored and not viewed with a jaundiced eye, in that they avoid the delays of litigation and expedite the granting of relief. Disability settlements deserve careful consideration by the commission and by this court, and when their approval is denied the grounds for the denial should be stated. If the reasons for the denial are given, the parties may find little cause for seeking a review of the commission's decision; thus the delay and expense of an appeal may be avoided. Furthermore, reviews by this court will be simplified and expedited when the basis for the commission's action is indicated and presented with clarity.

■ Appropriately, written medical reports pertaining to relator's injuries and disabilities, as well as the industrial commission's entire file and record pertaining to relator's case, were by reference made a part of the stipulation. Dr. Arthur H. Pedersen

362

expressed the opinion that there are certain types of work which relator can do if he is permitted to occupy a sitting position while working. He found two factors present besides the injury, namely, arteriosclerosis and arthritic involvement—which represented degenerative changes which are taking place in relator and which were present prior to, and were not the result of, the accident. He further stated that the arthritic condition *could have been* aggravated at the time of the accident, but that the aggravation should have been terminated at the time of the examination. In other words, Dr. Pedersen did not express any opinion that the accident had aggravated the prior arthritic condition, but merely that such an aggravation was a possibility. Medical opinions which do nothing more than speculate on the possibility that an injury may have aggravated a prior arthritic condition provide no basis for a finding that such aggravation resulted.

Dr. H. M. McIntire expressed the opinion that relator is permanently and totally disabled. He further believed that the disability from the injury was at least equal to the percentage of permanent partial disability as found by Dr. Malvin J. Nydahl. In addition he stated:

"While Mr. Senske's recovery has been as good as could be expected considering the nature of the fractures and dislocations other complications, including arteriosclerosis, have intervened to aggravate his condition and impede his recovery."

Although Dr. McIntire found that a permanent disability existed, he did not express an opinion that the injury had aggravated any preëxisting arteriosclerosis or any other preëxisting condition. He simply stated that *other complications,* including arteriosclerosis, *have intervened* to aggravate his condition and impede his recovery. Degenerative diseases such as arteriosclerosis *which progress normally and exist independently of an accidental injury* do not constitute a preëxisting disability within the meaning of the compensation act. Skoog v. Schmahl, 198 Minn. 504, 270 N. W. 129; see, Enkel v. Northwest Airlines, Inc. 221 Minn. 532, 22 N. W. (2d) 635.

What is meant by the intervention of "other complications" is purely speculative and provides no basis for a finding of either the existence or the aggravation of a preëxisting disability. The commission's refusal to approve the proposed lump-sum settlement may be sustained alone on the ground that the medical reports supplied no basis for a finding that the accidental injury received by relator had combined with a prior disability existing at the time of the accident to produce a permanent total disability so as to qualify relator for the grant of any total disability benefits from the special fund. Skoog v. Schmahl, *supra*.

■ Relator's proposed use of the lump-sum settlement, if allowed, also indicates that the commission exercised a sound discretion in another respect. Relator stated that he would use $1,200 thereof in the payment of an indebtedness. There is no indication for what purpose the indebtedness was incurred. If a material part of a lump-sum settlement is to be exhausted in the payment of an indebtedness, the purpose of awarding disability benefits, namely, that of providing the disabled workman with support or the means for his rehabilitation by qualifying him for other and lighter work, to the end that he will not become a burden upon the public, may be wholly defeated. If the proceeds of a lump-sum settlement are to be depleted by devoting them to the payment of debts, such settlement is improvident and is neither fair nor reasonable within the meaning of the act; furthermore, such lump-sum settlement becomes then by indirection a device for circumventing the express provisions of § 176.23 which state that claims for compensation owned by an injured employe shall not be assignable and shall be exempt from seizure or sale for the payment of any debt or liability except as the compensation act may otherwise provide. An individual's desire to pay his debts is a most honorable trait, for which he is to be highly commended, but disability benefits were not intended for that purpose. If a disabled workman is once rehabilitated by means of a provident lump-sum settlement, it may be assumed that he will undertake to satisfy his obligations out of his restored earning

capacity. We do not mean to say that a material part of a lump-sum settlement for disability benefits may not, in exceptional cases, be devoted reasonably and providently to the payment of certain debts, such as those which are secured by a lien upon a disabled workman's home and for the nonpayment of which the home may be lost.

The decision of the industrial commission is affirmed.

Affirmed.

### UPON PETITION FOR REARGUMENT.

On February 16, 1951, the following opinion was filed:

MATSON, JUSTICE.

Obviously, the court in its use of the word *improvident* was not casting any reflection upon relator's attorneys but was only giving expression to the general principle of law that a proposed settlement, pursuant to M. S. A. 176.69, is not fair and reasonable if it is, in the light of the purposes of the workmen's compensation act, improvident as to the employe. His welfare and that of the public are closely related. It is true in the instant case that employe had property consisting of a home valued at $10,000, a store building valued at $15,000 from which he received a monthly rental of $130, and other personal property. In carrying out the purpose of the workmen's compensation act, the employe's personal financial status, however, is of little significance. If we bear in mind, as pointed out in the main opinion, that a lump-sum settlement—as a departure from the normal mode of periodic payment of disability benefits—should be allowed *only with a cautious regard for the welfare of the employe and the protection of the public,* then it becomes clear that whether a settlement is improvident under § 176.69 is not dependent upon the employe's financial status. The purpose of the act is to provide the employe with a stabilized income over an extended period. An employe's possession of considerable assets at the time of the proposed settlement is no assurance that such assets will be preserved for the future. The normal statutory mode of

making periodic payments was designed *to protect both the public and the employe* by providing a stabilized disability income over an extended period of time. As an exception to this general rule, an employe's financial status may become a factor where he is about to lose his home unless a mortgage thereon is paid, or where a lump-sum settlement may serve to rehabilitate the individual, if the amount thereof, when combined with other assets of the employe, is large enough to enable him to become established in the pursuit of other and lighter work. In the instant case, no such exception was involved.

Relator was represented with fidelity and ability. It was not the fault of any attorney that § 176.69 had not heretofore been construed.

Subject to the foregoing explanation, relator's petition is denied. So ordered.

Mr. Justice Frank T. Gallagher took no part in the consideration or decision of this case.

