## AGNES V. BROWN v. GENERAL DRIVERS UNION NO. 544 AND ANOTHER.[1]

April 10, 1942.

No. 33,097.

*Fred A. Ossanna* and *Carlson & Carlsen,* for relator.
*Sexton, Mordaunt, Kennedy & Carroll,* for respondents.

HOLT, JUSTICE.

*Certiorari* to review a decision of the industrial commission denying compensation to the widow and two minor children of William S. Brown, the president and employe of a local labor union, No. 544, found dead, in his car, from a bullet wound, at 1213 Washington avenue north, at nine o'clock in the evening of May 25, 1938.

[1]Reported in 3 N. W. (2d) 423.

The determinative findings read:

"1. That on May 25, 1938, Wm. S. Brown was in the employ of General Drivers Union No. 544, an association, at a weekly wage of $50.00, under a Minnesota contract of hire. * * *

3. That on said date, the employe, Wm. S. Brown, was found dead in his automobile as the result of an accident which did not arise out of or in the course of his employment."

The assignments of error are directed against the finding No. 3, above quoted, the claim being that it is not supported by the evidence, that the evidence compels a finding that Brown's death resulted from an accident, arising out of and in the course of his employment, and that as a matter of law his death arose out of and in the course thereof. There is only one other assignment of error presented, viz., that it was prejudicial error to exclude exhibit "C."

The referee heard the case and made and filed his findings in July 1940 denying compensation. Appeal to the commission was taken and heard. On December 3, 1940, before deciding the appeal, the commission set aside the findings of the referee, and referred the case back to him to take additional testimony and make a decision. A greater quantity of testimony was taken than before. The findings above set out were made and filed denying compensation. Relator again appealed to the commission, which adopted and approved the findings and decision of the referee, one member dissenting. Extensive memoranda by the majority and dissenting member were filed.

It is settled law that the burden is on the one seeking recovery under the workmen's compensation act to prove that the injury or death of the employe was "caused by accident arising out of and in the course of * * * employment." Mason St. 1938 Supp. § 4272-1. There is now no occasion to add anything to what is meant or intended by the quoted clause that is found in the following of our recent decisions: Hanson v. Robitshek-Schneider Co. 209 Minn. 596, 297 N. W. 19; Corcoran v. Teamsters

& Chauffeurs Joint Council, 209 Minn. 289, 297 N. W. 4; Lindell v. Minnesota Am. Legion Pub. Co. 208 Minn. 415, 294 N. W. 416, wherein our prior cases on the same subject are referred to and discussed. In connection with the quoted clause from § 4272-1, Mason St. 1927, § 4326(j), is to be given effect, which provides that the workmen's compensation act "shall not include an injury caused by the act of a third person or fellow employe intended to injure the employe because of reasons personal to him, and not directed against him as an employe, or because of his employment." In examining the above decisions, it is rather important to note whether the findings of the commission are upheld or the reverse. Inferences of fact from the testimony and surrounding circumstances proved are for the commission and not for this court.

Most of the testimony taken in the second hearing went to prove that Brown's employment as president and organizer of local Union No. 544 was a hazardous or extrahazardous occupation. There was no attempt to contradict this proof. And it was unnecessary to prove that those who participated in the strikes called by or defended by No. 544 in 1934 and in 1936 engaged in an extra hazardous undertaking. It was common knowledge that Lyman, one of the deputized citizens opposing the strikers, was killed in the 1934 affray. Without undertaking to express an opinion as to which side was right or wrong, it is sufficient to say that one who is employed as leader of either of two fighting groups armed with guns and deadly weapons in flagrant violation of criminal statutes and city ordinances is in an extrahazardous employment. But it does not follow that if such a one is found injured or dead from violence such injury or death arose out of and in the course of the employment within the meaning of the workmen's compensation act. The evidence of organizers and officials of No. 544, and its predecessor, No. 574, shows that very few threats or bodily harm befell them in their many years of service. The evidence is lacking of any strike or unusual conflict between No. 544 and employers or rival unions in 1938 up to May 25. On that day Brown had attended the usual meeting and his duties at

the place of business of No. 544, 257 Plymouth avenue north. At five o'clock he went to the liquor store of one Putz on Fifth street and Plymouth avenue, where he stayed till eight o'clock, partaking of four or five drinks of whiskey and playing some game with Mr. Putz and a companion. No evidence of any dispute or contention with anyone was adduced. At about eight o'clock he left, stating that he was going to a meeting of the Central Labor Union, to which he was a delegate, at its assembly quarters in the rear of the Pence Building, Hennepin avenue and Eighth street, set for eight o'clock that evening. Brown had stayed at the home of Mrs. Nelson, at 1213 Third street north, on the Saturday night before May 25, and also Monday and Tuesday nights, instead of at his home at 1615 Vincent avenue north. The inferences from the testimony referred to were for the triers of fact. No attempt was made to cast any light on such behavior of a husband and father. It appears to us that to attribute Brown's death to an accident arising out of and in the course of his employment would be a mere guess or conjecture upon this record.

That the commission rightly excluded exhibit "C," a magazine containing, in its issue of March 1938, two months before Brown's death, an article headed: "Marked for Death * * * William Brown, another labor leader, who was marked for death but escaped," as hearsay and irrelevant needs no discussion.

The writ is discharged and the decision of the industrial commission is affirmed.