## FRED W. CADDY v. R. MATURI & COMPANY AND ANOTHER.[1]

April 14, 1944.

No. 33,679.

*Naughtin & Henley,* for relator.

*C. V. Hoaglund, G. P. Mahoney,* and *John S. Morrison,* for respondents.

THOMAS GALLAGHER, JUSTICE.

*Certiorari* upon the relation of Fred Caddy, employe, to review the action of the industrial commission in proceedings brought by him under the workmen's compensation act against R. Maturi & Company, employer, and Employers Mutual Insurance Company, insurer, wherein it was determined that relator's disability was not due to an accident arising out of or in the course of his employment.

[1] Reported in 14 N. W. (2d) 393.

In May 1942, relator was employed by R. Maturi & Company to operate a Diesel-powered caterpillar-tractor at the Majorka Mine about 22 miles from Hibbing. The tractor weighed from 18 to 20 tons and was equipped with a large adjustable steel blade weighing five or six tons for the purpose of moving dirt and rock. Relator had been engaged in like work for four or five years by other employers prior to his employment here.

Relator testified that on August 18, 1942, while he was engaged in changing the angle of the steel blade, an operation requiring considerable exertion in a "stooped over" position, he felt "a catch" in his lower back. He completed his work that day, but his back commenced to bother him immediately thereafter. He testified that that night after work he felt numb or paralyzed down to his hip bones and that he had pain that night at home. He returned to work the following day but experienced periodic pain in his back, which lasted each time until he commenced to perspire. This condition persisted for about a week, but he did not notify his employer during this time because of his belief that the injury was not serious. At the end of this period the pain was such that he was forced to quit work for a short time. Thereafter he returned to work and continued until September 1, 1942, when he was again obliged to quit, and, on the advice of his foreman, entered the Mesaba Clinic, where he was treated by Dr. R. L. Bowen. X-rays were negative for any bone injuries, and diathermy treatments were given up to February 18, 1943.

On December 10, 1942, while in bed at home, relator "felt a bone snap" in his back as he reached to the floor. Thereafter his condition began to improve, and he appears to have regained normal health about February 11, 1943. He did not return to his work as a tractor operator, but took a course in welding, an occupation which he concluded would not be as wearing upon him as his previous employment.

Relator testified that he had had no previous disability; that he had certain teeth removed between July and August 1942, both before and after the alleged accident, but that the removal thereof

had no effect on his back. His doctor testified that he did not believe the infection found in relator's mouth had any relationship to the pain experienced in his back.

Relator made no complaint of an accident at the outset, but frequently complained of his pain. On October 1, 1942, he wrote his employer as follows:

"The insurance man was here to see me, wanted to know how I got hurt. I told him I couldn't remember any time that I had an accident. It came on gradual for the last week or ten days that I worked. I took my teeth out. Instead of getting any better I got worse. Then I went to the hospital, had two doctors examine me & had 3 xrays and both doctors said I had pretty bad back, they wouldn't tell me what it was. I told them then that I thought my kidneys tore loose from my back. They told me to stay in bed for 2 or 3 weeks more and gave me some morphine tablets to kill the pain. The ins. man wanted to know how I got hurt so that is what I told him. I figured it was caused from so much jarring. The ins. co. wants you to send in a report of some kind. The last shift I worked was for Hodge. When he took me home I couldn't get out of his car.

"Respectfully yours,
"(Signed) Fred W. Caddy"

On October 10 he made a statement to the insurance adjuster. This was not produced in evidence, and it does not appear whether or not it referred to an accident.

Relator's claim of injury was corroborated by a fellow-employe, Andrew Perpruner. He also testified that he had signed two papers with reference thereto at the request of his employer. Only one of these was produced at the hearing. The one produced indicated that the witness had advised the employer that Caddy had told him that at first he thought his teeth were the trouble, but later that he thought his back was strained while engaged in altering the bulldozer. The date of this statement does not appear.

The only medical testimony submitted by any of the parties was that of Dr. R. L. Bowen, relator's physician. His testimony with reference to relator's disability was as follows:

"* * * that his condition is probably accounted for by a slipped disk. * * * this particular movement that he made corresponds very much to this [orthopedic] manipulation * * *. I think it was that one particular incident as much as anything else that made me feel that his disability was probably due to a slipped disk. We have no X-rays to confirm that, * * * but because of the fact that after this time [when relator felt something snap while he was at the clinic] he began to get better, it was my feeling that he probably had a slipped disk.

*    *    *    *    *

"* * * when I first questioned him * * * he couldn't attribute it at first to any one particular time, but he felt as if it may have been a series of shaking * * *."

Dr. Bowen expressed the opinion that relator was suffering from an injury—a dislocated disk—and that his disability was not due to an infection in his teeth; that the nearest thing he had to go by was that the constant jarring resulting from the operation of a bulldozer over rough terrain could cause a slipped disk; that he questioned relator with reference to a specific time when the injury was noted and asked him whether it was his feeling that it occurred while he was driving this tractor; that it was his (Dr. Bowen's) impression—

"that it was more of a series of insults, you might call it, to the back than any one particular time. * * * that while he was driving this business, this disk was dislocated and slipped out, then he goes on with repeated continual jarring and shaking * * * and these symptoms * * * appear as we saw them."

The only testimony submitted by respondents was that of one of its foremen. He was not in charge of relator's shift at the time relator claims he was injured. He testified that relator had never advised him of an accidental injury, but admitted that relator had

complained of pain in his back; also, that he had noticed relator appeared unable to perform his work as efficiently as usual, and that he had advised him to go to the hospital. He further testified that the employer's clerk, W. Rahja, had inquired of him as to the accident suffered by relator, but the date of such inquiry does not appear.

On the foregoing evidence, the referee made findings disallowing relator's claim, holding that his disability was not due to an accidental injury but to natural causes and disease.

On appeal to the industrial commission, relator advised the commission that he had been further examined by two additional doctors, including a nerve specialist and a bone and joint surgeon, and that the latter was of the opinion that employe was suffering from an injury to the lumbosacral area of the spine. By virtue thereof, relator petitioned the industrial commission to adjourn the hearing on appeal and to order a hearing *de novo,* or to reassign the case for rehearing before the referee, or for a further hearing for the purpose of taking additional testimony at a time and place to be designated by the commission.

The commission denied the petition, and in its decision partially vacated the referee's finding to the effect that relator's disability was due to natural causes and disease. In lieu thereof, it merely determined that relator's disability was not caused by an accidental injury arising out of or in the course of his employment.

■ Relator asserts that there is no evidence to sustain the commission's finding that disability was not due to an accident, and contends that the decision of the commission was based solely upon the authority of Young v. Melrose Granite Co. 152 Minn. 512, 189 N. W. 426, 29 A. L. R. 506. There is nothing in the record to indicate that the decision of the commission was based upon this authority. Respondents in their brief, however, assert: "The relator is correct in assuming that the respondents claim this case is controlled by Young v. Melrose Granite Company, *supra.*" In view thereof, it may be well to refer briefly to this case. Holding that the disability there was not occasioned by an accident in the

course of employment, but was due, rather, to the long-continued strain under which the employe was obliged to work, this court stated (152 Minn. 516, 189 N. W. 428):

"* * * The compensation act was not designed to cover cases where injuries result from ordinary overwork or too long continued effort *without any sudden or violent rupture or collapse of some physical structure or function of the body.*" (Italics supplied.)

If the decision here is based upon that authority, there should be present some evidence that relator's disability was due to overwork or long-continued effort without any "sudden or violent * * * collapse of some physical structure * * * of the body." The testimony here, however, indicates either (1) that relator was suffering from a slipped disk, which was occasioned by a sudden wrench or jerk, or (2) that it was caused by a series of jars from the operation of the tractor, which culminated in the disk finally slipping out of place. There is no evidence that his disability was due to an infection in his mouth or teeth, or other like causes.

If either of the two circumstances above mentioned caused the disability here, then the Young case would have no application, for it would then be plain that the disability was occasioned by the collapse of some physical structure of relator's body and hence was within the exception mentioned in that case. It is unimportant whether the final collapse was occasioned by one wrench or jerk immediately prior to the time the disk slipped out of place, or whether the disk finally slipped out of place at the end of a series of jars occasioned by and connected with relator's operation of the tractor for some time prior thereto.

The situation here would seem to be more nearly parallel to that in Klika v. Independent School Dist. 161 Minn. 461, 464, 202 N. W. 30, 31, relating to an employe predisposed to hernia, wherein this court stated:

"Finally, though the employe is predisposed to what is commonly called a rupture, though there is a lack of physical integrity of the parts so that a rupture is likely to result some time, though he has

a congenital or acquired condition favorable to its development, if an unusual strain or overexertion attendant upon the work induces its development, that is the legal cause and the result is compensable."

If the evidence here ultimately establishes that relator possessed a weakened bodily structure resulting from his employment and that on some particular occasion an unusual strain or overexertion caused a disk in his back to slip out of place, then any subsequent disability resulting therefrom would be covered by the compensation act. State ex rel. Puhlmann v. District Court, 137 Minn. 30, 162 N. W. 678.

■ In view of counsels' references to Young v. Melrose Granite Co. *supra,* we are uncertain whether this review is sought to ascertain whether the rule therein was properly applied to undisputed facts, or whether the case is now submitted for the purpose of determining whether the evidence reasonably tends to support the findings of the commission. The evidence submitted by relator appears to be consistent and corroborated by many circumstances. The medical testimony might have been somewhat more definite, but a complete reading of it makes clear that it was the opinion of Dr. Bowen that relator's disability was due to an injury rather than to disease. It is true, relator made no immediate complaint of having sustained an accidental injury. This may be explained by his conclusion at the time that he did not regard it as serious and expected to recover shortly. As stated in Clausen v. Minnesota Steel Co. 186 Minn. 80, 83, 242 N. W. 397, 398:

"* * * There are accidents so trivial in apparent results at the time that neither the one who might witness the same nor the victim thereof would anticipate disability therefrom, yet the subsequent development thereof may cause not only loss of members but life itself."

While we are not prepared to state that the evidence is such that a finding in favor of relator was inescapable, yet, on the other hand, there is little, if anything, in the record to sustain the conclusion that relator's disability was not due to an accidental injury.

Because of the doubt existing here on these matters, we deem it advisable to remand the case for a hearing *de novo,* with leave to both parties to offer and submit such competent evidence as they may deem advisable, and, if possible, to clarify the record on matters which, as suggested, now appear somewhat vague and indefinite.

Remanded with directions for a hearing *de novo* with leave to submit such competent evidence as the parties may desire, and for a determination in the light of the evidence thereupon submitted.

Attorneys' fees of $100 are allowed relator.

MR. JUSTICE MAGNEY took no part in the consideration or decision of this case.