FREDERIC J. MANTHE v. EMPLOYERS MUTUAL CASUALTY
COMPANY AND ANOTHER.[1]

May 29, 1953.

No. 35,939.

*Samuel I. Sigal,* for relator.
*Reynolds & McLeod* and *Harold J. Carroll,* for respondents.

LORING, CHIEF JUSTICE.

Certiorari upon the relation of Frederic J. Manthe to review a
decision of the industrial commission denying him compensation
under the workmen's compensation act.

Relator's petition for compensation alleged that on or about
February 1, 1950, he was injured while in the employ of the named
employer at or near Winona, Minnesota, by an accident arising
out of and in the course of his employment. The petition does not
state what facts constituted the "accident." It did allege that said
employer had due notice of the accident and injury and that de-

---

[1]Reported in 58 N. W. (2d) 758.

mand for compensation and benefits on account thereof had been duly made.

The answer, as amended, denied that any injury or disability to the relator arose from an accident within the scope or in the course of his employment. However, the answer did admit due notice of "said accident" and injury and demand for compensation on account thereof. There is no explanation of what the "said accident" was.

The referee found that relator did not suffer an accidental injury which arose out of and in the course of his employment and consequently denied compensation. He did find, however, that there was an employer-employee relationship, that the employer had statutory notice and knowledge of "said alleged accidental injury," that, as a result of the "alleged accidental injury," the employee suffered a 20 percent permanent partial disability of his back, and that he made certain medical expenditures in connection therewith. The industrial commission affirmed the findings and conclusions of the referee without opinion.

Relator petitioned for certiorari on the grounds that the decision of the commission was not in conformity with the terms of the workmen's compensation act and was unwarranted by the evidence.

The evidence discloses that relator was a safety engineer for an insurance company. His work required him to drive some 1,600 miles a week. Although the employer presented no witness, there was extensive cross-examination of relator's witnesses. There was a great deal of evidence relating to a defective seat in relator's company-furnished automobile. It was relator's position that the injury was caused by extensive riding on this defective seat which resulted in a series of minor traumas due to the continual jolting and jarring of relator's spine. There was also evidence that relator suffered a fall while working, but relator admitted that he never reported said fall to his employer. As previously indicated the employer's answer admits due notice of an accident and demand for compensation, and the referee found due notice. However,

there is no indication to which "accident" these admissions and findings have reference.

The record indicates several possible causes of relator's present condition. Relator introduced two medical experts. One of them testified that, assuming relator's testimony to be true, his symptoms might very definitely be the result of improper posture while driving. He also testified, however, that he believed the disability to be due to the driving of the automobile with a defective seat. He admitted on cross-examination that, based on the position of the lumbar region of the spine, any individual who, in driving an automobile, does not recline against the back of the seat but leans slightly forward to grasp the steering wheel is subject to the probability of incurring a back strain such as plaintiff incurred. He also admitted that he could not account for the fact that plaintiff's back condition became worse after a cushion was placed on the seat. He mentioned several other possible causes of plaintiff's condition: arthritis, spur formation, congenital conditions and defects, and lack of fusion of the first sacral segment. However, there is no evidence of plaintiff's suffering from any of those conditions.

Plaintiff's other medical expert testified that plaintiff's condition might have been caused by riding on a defective automobile seat and, furthermore, that it was his opinion that plaintiff's condition was causally connected with the riding on the defective seat. On cross-examination, this witness also testified that the incident of plaintiff's falling contributed to plaintiff's condition and probably this particular injury a little more than the other injuries. He described plaintiff's condition as a prolapsed, or degenerative, disc and testified that it was a diseased process but that the actual protrusion of the disc could be contributed to by a lot of driving particularly if it was on uneven ground. He said that even ordinary town driving on pavement might be definitely conceived to be a contribution to the development of a prolapsed disc. He admitted that, to some extent, a particular movement or position which relator experienced might merely call his attention to the fact that there

was a protrusion although that particular event was not the cause of the protrusion. He also admitted that it was possible that the position which plaintiff was forced to assume in the driving of his car merely produced pain in an already protruded disc but did not cause the propulsion of the disc.

Finally, he admitted that the situation was one in which he believed that the work in which plaintiff was engaged—the constant driving, et cetera—influenced the development of the degenerative disease. On redirect examination, he reaffirmed his position that the repeated minor traumas, including the fall, precipitated the symptoms and aggravated the pre-existing degenerative condition into a state of disability. In further explanation, he testified that "you have * * * a condition which is not due to or the result of trauma" but which, apparently, can be aggravated by trauma. Finally, respondent's attorney asked him:

"Q. That same thing would take place in the presence of a degenerative disc through the normal living?

"A. I think that is the way a disc develops."

The referee found that the employee did suffer a disability as a result of "said alleged accidental injury." He also found that the employer had statutory notice and knowledge of "said alleged accidental injury." Relator challenges as error the finding that the relator "did not suffer an accidental injury to his person which arose out of and in the course of his said employment * * *."

While this simple statement may satisfy the statutory requirement, it gives little indication to either the industrial commission or this court of the basis on which compensation was denied. If compensation was denied because the referee felt that the injury resulted from mere "normal" living conditions, including "normal" driving, the record possibly would sustain such a conclusion. However, if he found that the injury was due to the fall, there can be no doubt that such fall was an accidental injury arising out of and in the course of his employment. If this was his conclusion, he would have had to find due notice and demand on the basis of an admission in the answer since the evidence is to the contrary. It is also

possible that the referee found that the injury resulted from the jars occasioned by riding on the defective automobile seat but that such a cause was not an "accidental injury." On authority of Caddy v. R. Maturi & Co. 217 Minn. 207, 14 N. W. (2d) 393, such a decision would appear to be erroneous. The Caddy case indicated that the injuries would be compensable which resulted from a series of relatively minor jars culminating in a disc finally slipping out of place. This court in the Caddy case distinguished Young v. Melrose Granite Co. 152 Minn. 512, 189 N. W. 426, 29 A. L. R. 506. The rule of the Young case denies compensation for injuries resulting from the strain of ordinary overwork or too-long-continued effort.

The indefiniteness of the pleadings and findings leaves the true factual basis for the conclusion highly uncertain. The disposition in the Caddy case, therefore, seems particularly appropriate to this situation (217 Minn. 213, 14 N. W. [2d] 396):

"While we are not prepared to state that the evidence is such that a finding in favor of relator was inescapable, yet, on the other hand, there is little, if anything, in the record to sustain the conclusion that relator's disability was not due to an accidental injury.

"Because of the doubt existing here on these matters, we deem it advisable to remand the case for a hearing *de novo,* with leave to both parties to offer and submit such competent evidence as they may deem advisable, and, if possible, to clarify the record on matters which, as suggested, now appear somewhat vague and indefinite.

"Remanded with directions for a hearing *de novo* with leave to submit such competent evidence as the parties may desire, and for a determination in the light of the evidence thereupon submitted."

To properly review a matter such as this, it is necessary not only that the petition discloses the claimed cause or causes of the injury and that the evidence be directed to support the allegations of the petition but also that the findings indicate briefly what material facts in dispute were found to be true and, where the evi-

dence indicates several possible causative conditions, which condition was found to be the true cause. See, M. S. A. 176.62.

Remanded with directions for a hearing *de novo* with an allowance to relator of $250 attorney's fees.