# SIGNE CHILLSTROM v. TROJAN SEED COMPANY AND ANOTHER.[1]

July 9, 1954.

No. 36,284.

[1]Reported in 65 N. W. (2d) 888.

*Hansen, Hazen & Lynch,* for relators.

*S. S. Larson* and *Stone, Anthony & MacKenzie,* for respondent.

DELL, CHIEF JUSTICE.

Certiorari to review a decision of the industrial commission affirming the findings and determination of its referee awarding the widow and two dependent children of Edward T. Chillstrom, deceased, compensation benefits and directing the payment of medical, hospital, and burial expense.

On March 25, 1950, Chillstrom died as a result of the toxic reaction of freezing and its effect upon his heart. The freezing occurred between March 16 and 19. The referee found that it occurred because of an accident arising out of and in the course of his employment. Relators concede the fact of employment up to the time the truck stopped off the road; the weekly wage of the decedent; that the widow and children were dependents within the meaning of the compensation law; the amount of the medical and burial expense; that the employer had due notice of the claimed accidental death; and that the industrial commission had jurisdiction of the proceeding. The only facts in issue raise the question of whether there was an accidental injury arising out of and in the course of the employment.

On Sunday evening, March 19, 1950, the deceased was discovered lying alongside the rear wheel of his employer's panel truck on a country road near Lake Andes, South Dakota. The truck was off the road on the left-hand side. Three of its wheels were in the ditch and the right rear wheel was just off the shoulder. There was some

gasoline in the tank but it would no longer feed to the motor because of the sharp tilt of the truck. Otherwise the truck was in perfect mechanical condition. When found, the deceased was badly frozen and was either unconscious or semi-conscious. He was taken to the hospital at Pickstown, South Dakota, where he died.

The deceased had been employed as a seed salesman for the Trojan Seed Company, hereinafter referred to as relator, since the fall of 1949. At the time of his death he was 45 years old. Relator furnished him with a panel truck for use in his sales work and in making deliveries of seed to the farmers. His territory was all of Charles Mix county, South Dakota. Deceased lived at the hotel in Lake Andes.

On Thursday morning, March 16, at the usual time, the deceased left the hotel to go to work. At that time he appeared to be normal and cheerful. Shortly after leaving the hotel he stopped at the Lake Andes municipal liquor store where he purchased two pints of Imperial whiskey which he carried out to the truck; he then drove away. Soon afterward he arrived at the Norris Nelson farm about a mile north of Lake Andes where there was space in a shed for the storage of relator's grain. With the assistance of Robert Nelson, a son of Norris, he loaded some 20 to 26 sacks of grain into the truck and drove away. The Nelsons noticed nothing unusual about his behavior or attitude nor did they observe anything to indicate that he was using intoxicating liquor that morning. The record is silent as to his activities between the time he left the Nelson farm and the time that he arrived at the place on the road where he was found the following Sunday.

From a note written to his "folks" and from his salesman's daily reports to his employer written on report blanks furnished to him by his employer, it appears that decedent arrived at the place where he was ultimately found early Thursday afternoon, March 16. The salesman's report dated March 16 shows that he made three calls that day and collected $18.92. While the evidence does not disclose what calls were made, there was corroborating evidence in support of the report since it appears from the testimony of several wit-

nesses that there were less sacks of grain on the truck when it was found than had been loaded on the truck at the Nelson farm on the morning of March 16. The salesman's daily reports left by the deceased express the belief that he had a slight stroke which affected his legs and caused him to slide into the ditch; that he had shoveled too hard at the last stop; and that he was unable to leave the truck to get help.

It appears from the evidence that Ernest Payer, a farm boy 15 years old, passed the truck while returning from school Thursday afternoon; that he observed the deceased seated in the cab with his eyes open; that the following morning on his way to school he again passed the truck, at which time it appeared to him that the deceased was sleeping; that on Friday afternoon, in returning from school, he again passed the truck at which time the deceased had his eyes open. The Payer boy testified that on none of these occasions did the deceased give any indication that he needed or wanted assistance, so the boy gave none. Louis Placek, a farmer, passed the truck on Saturday afternoon, March 18. As he aproached the truck he noticed the left door open and a man reached out and closed it so that he knew the truck was occupied. However, he could not see into the truck "because the windows were plastered over." He did not stop to render any assistance. The evidence of the Payer boy and Placek suggest that the truck was not in the ditch to the extent that it was when the deceased was found on Sunday. There was evidence from the operator of the wrecker service who removed the truck, at the request of the sheriff after the deceased was found on Sunday, that the tire marks showed that an effort had been made to get the truck out of the ditch. On Thursday afternoon, March 16, it was above freezing. When the Payer boy passed the truck that day the road was muddy and slippery. Thereafter the weather changed. It turned to freezing and on Saturday, March 18, it was "blizzardy weather."

There is a sharp dispute between the parties as to what the evidence and the reasonable inferences to be drawn therefrom establish. Relator claims that the evidence is insufficient to support a finding that deceased suffered an accidental injury arising out of and in

the course of his employment. It claims that when deceased stopped his truck beside the road that he did so for a reason personal to himself; that he thereby departed from his employment and did not thereafter return to it; and that when the freezing occurred resulting in his death he was not within the coverage of the compensation act. In support of its position it introduced evidence that while deceased was employed at Warren, Minnesota, from 1935 to 1938 he used intoxicating liquor to excess, became short in his accounts with his employer, and was discharged because of that conduct; that thereafter in California the same thing occurred with the same result. It also offered evidence from which it could be found that when he was employed by relator he stated that he had missed many opportunities because of drink, had taken the cure for alcohol, and would never use liquor again. His contract of employment with relator was in writing and it provided that he should not use intoxicating liquor while on the job. Relator also offered evidence from which it could be found that deceased had broken his promise and was again drinking to excess; that he had become short in his accounts with the relator and was to have a meeting with Mr. Ralph J. Eichten, its district manager, the afternoon of March 16, the day that his truck stopped at the side of the road; and that the purpose of the meeting was to have an accounting with his employer. Relator contends that deceased must have realized that he again faced the problem of being discharged with the possibility of becoming involved in a criminal prosecution.

In support of its contention that when deceased stopped his truck at the side of the road he did so on a mission personal to himself, relator produced Dr. Gordon R. Kamman, a specialist in nervous and mental diseases, as a witness in its behalf. He had never seen or examined the deceased. He had, however, read a transcript of all the evidence in the case including the depositions. He had also read and considered the note which the deceased wrote to his folks on March 18 and the salesman's daily reports prepared by the decedent dated March 16, 17 and 18. He had also examined the hospital record and the death certificate. Basing his testimony upon the informa-

tion thus obtained, he testified that in his opinion the deceased was not a normal, stable individual but was a "psychopathic personality"; that on March 16 the deceased was confronted with an "impasse or dead end"; and that there were "three hypotheses" any one of which "could be tenable" for decedent's remaining at the side of the road. (1) He "may have been drinking to the point where he didn't pass out completely but still wasn't able to move around sufficiently to get out of his cab and go for help. * * * That is one hypothesis conceivable and it is very possible that he just—and he had bought two bottles of whiskey that morning—that he was in an alcoholic state and then became the victim of the cold and gradually froze." (2) "The second hypothesis would be that he attempted to inflict injury upon himself to some degree for the purpose of exciting sympathy, also producing a disability which may result in compensation and relieve him of some of his financial straights." (3) "And the third is that he really meant to commit suicide. Suicide by freezing is not uncommon, not unknown, I will say. I have seen a number of cases where people have attempted suicide by freezing themselves. Some succeeded, some have frozen severely enough to require amputation. So suicide by freezing is not uncommon, by any means. Those are the three hypotheses that come to my mind as a possible explanation for this man's death."

In support of respondent's claim that deceased suffered an accidental injury arising out of and in the course of his employment, she offered evidence that deceased was an industrious and reliable employee; that he did not drink intoxicating liquor, at least to excess; and that he was not using intoxicating liquor on March 16, or any of the days while his truck was stopped alongside of the road. Respondent points out that deceased left the Andes Hotel at the usual hour on the morning of March 16 and that the testimony of the hotel clerk, the manager of the liquor store, and Norris and Robert Nelson establishes that deceased was normal, cheerful, and his usual self and that there was nothing about him or his conduct to indicate that he was using intoxicating liquor that day. That he worked part of the day she claims is established by the difference

in the number of sacks of corn on the truck at the time of its loading at the Nelson farm that morning when compared to the number of sacks on the truck at the time it was found on March 19. She points out that no bottles of liquor were found in or near the truck on March 19 and that the testimony of the sheriff, the Payer boy, Mr. and Mrs. Herbert W. Reiss and their son, and the attending physicians and the entries upon the hospital records are all to the effect that there was nothing about the deceased when he was found to indicate that he had been using intoxicating liquor.

She claims that from the evidence it could fairly be inferred that the liquor which deceased bought at the liquor store on the morning of March 16 was purchased for some patron and delivered to him prior to the time that the truck stopped at the side of the road; that, while deceased may have been indebted to his employer in an amount which D. P. McKusick, its secretary-treasurer, testified was $340.72, there was nothing to indicate to the deceased that he was about to be discharged by his employer or which would lead him to believe that he might be subject to a criminal prosecution. She further claims that it is unreasonable to contend that the deceased intended to inflict injury upon himself or to commit suicide by freezing since the temperature was above freezing when the truck stopped at the side of the road Thursday afternoon, March 16; that in any event it is unrealistic to suppose that a person would inflict injury upon himself or commit suicide in that manner or to believe that he could do so even if he wanted to alongside a public road subject to normal traffic.

Respondent claims that the fair and reasonable inference to be drawn from the evidence is that while deceased was driving upon the road he suffered a physical disability, in all probability a stroke, which caused him to lose control of the truck as a result of which it left the highway on the wrong side of the road and went into the ditch; that because of his disability he was unable to summon help or walk to a place of shelter; and that finally in desperation on Sunday, March 19, when death appeared imminent he got out of the truck in a last effort to save himself but fell to the ground and was

478

found that day partly frozen. She points to the three salesman's daily reports to his employer and the note which he left to his folks along with the circumstances developed in the evidence in support of her claim.

To substantiate her contention respondent produced as a witness Dr. Burton P. Grimes, a specialist in nervous and mental diseases who is the superintendent of the state hospital at St. Peter. He had not seen nor examined the deceased, but respondent, by following substantially the same procedure as a basis for the testimony of Dr. Grimes as was used by relator as a basis for the testimony of Dr. Kamman, elicited and obtained an opinion from Dr. Grimes that the deceased suffered a slight stroke which impaired his ability to use his feet and legs. The stroke was described by Dr. Grimes as a "cerebral thrombosis" or "cerebral vascular accident involving a small part of the brain." This, respondent claims, accounts for decedent's freezing and death. In a voluminous record both parties point to other evidence, unnecessary to summarize here, which they contend supports their respective claims.

 If the deceased, while acting within the course and scope of his employment, suffered a physical disability which caused him to lose control of the truck so that it left the road, and because of such disability he was unable to move it or walk to a place of shelter or to summon help, and if, because of that situation, he suffered a freezing accident resulting in his death, respondent is entitled to recover. And if, while acting within the course and scope of his employment, he parked the truck at the side of the road and was thereafter unable to move or leave it or to summon help due to a physical disability, and because of the inclemency of the weather he suffered a freezing accident resulting in his death, respondent is entitled to recover.

The burden is upon the respondent to establish that the death of the deceased was caused by an accident arising out of and in the course of his employment.[2] Where there is substantial evidence that

[2]Brown v. General Drivers Union No. 544, 212 Minn. 265, 3 N. W. (2d) 423; Henry v. D. A. Odell Motor Car Co. 191 Minn. 92, 253 N. W. 110.

the death of an employee resulted from an accident which occurred during his hours of work, at a place where his duties required him to be or where he might properly have been in the performance of his duties, the trier of fact may reasonably conclude as a natural inference that the accident arose out of and in the course of the employment.[3] It is not the function of this court to determine whether, from the facts and the reasonable inferences to be drawn therefrom, the decision of the commission is correct or even preferable to another but rather whether the findings have sufficient basis in the evidence and in the inferences to be drawn from the evidence.[4]

In unwitnessed death cases, as here, the claimant is placed in an extremely difficult position. As stated in Horovitz, Workmen's Compensation, p. 133:

"* * * The death of the employee usually deprives the dependent of his best witness—the employee himself—and, especially where the accident is unwitnessed, some latitude should be given the claimant."

This practical difficulty has been recognized by this court. In Burke v. B. F. Nelson Mfg. Co. 219 Minn. 381, 387, 18 N. W. (2d) 121, 124, we stated:

"Here, the best witness, the employe, is dead, and it would indeed be difficult for the surviving dependent to establish that death arose out of and in the course of his employment if it were not permissible to draw reasonable inferences from the facts known to exist."

In Henry v. D. A. Odell Motor Car Co. *supra,* where a salesman suffered an accidental death while traveling in his automobile under circumstances indicating that death took place within the time and place where the duties of his employment required him to be, this court held that there is a natural inference that the accident arose

---

[3]Southwestern Portland Cement Co. v. Simpson (10 Cir.) 135 F. (2d) 584; Henry v. D. A. Odell Motor Car Co. *supra;* Ohlsen v. J. G. Dill Co. 222 Minn. 10, 23 N. W. (2d) 15.

[4]Judd v. Sanatorium Comm. 227 Minn. 303, 35 N. W. (2d) 430; Graf v. Montgomery Ward & Co. Inc. 234 Minn. 485, 49 N. W. (2d) 797; Petro v. Martin Baking Co. 239 Minn. 307, 58 N. W. (2d) 731; 6 Dunnell, Dig. & Supp. § 10426.

480

out of and in the course of his employment. See, Southwestern Portland Cement Co. v. Simpson, *supra*.

The workmen's compensation act was enacted as social legislation. It seeks the accomplishment of humane purposes. It creates new substantive rights and does not merely afford new remedial rights for old substantive rights.[5] It provides more certain, effective, and inexpensive relief for the injured workman than was offered at common law.[6] Consistent with the social purpose of the act, which includes the protection of the dependents as well as of the injured employee, a liberal policy is followed in the interpretation and administration of the act. The admission of evidence in a proceeding before the commission is not governed by common-law or statutory rules of evidence. M. S. A. 176.411 provides:

"Except as otherwise provided by this chapter, when the commission, a commissioner or referee makes an investigation or conducts a hearing, it or he is bound neither by the common law or statutory rules of evidence nor by technical or formal rules of pleading or procedure. The investigation or hearing shall be conducted in a manner to ascertain the substantial rights of the parties.

"Findings of fact shall be based upon competent evidence only." (M. S. A. 1949, § 176.54, which was in effect at the time this action was commenced, was repealed by L. 1953, c. 755, § 83. The sections are substantially the same.)

By this statute the legislature intended that the procedure governing compensation hearings should be simplified and made flexible. The statute expressly provides that the findings of the commission must

---

[5]Fehland v. City of St. Paul, 215 Minn. 94, 9 N. W. (2d) 349; Foley v. Western Alloyed Steel Casting Co. 219 Minn. 571, 18 N. W. (2d) 541.

[6]Lewis v. Connolly Contracting Co. 196 Minn. 108, 264 N. W. 581; Senske v. Fairmont & Waseca Canning Co. 232 Minn. 350, 45 N. W. (2d) 640.

be based on competent evidence,[7] and this court has so held.[8] In determining the competency of evidence within the meaning of § 176.411 we have pursued the spirit of the workmen's compensation act by adopting a liberal policy in extending the exceptions to the hearsay rule.[9] This policy is well illustrated by a headnote of this court in Jacobs v. Village of Buhl, 199 Minn. 572, 273 N. W. 245,[10] which states:

"In workmen's compensation cases a liberal policy should be followed in the admission of declarations as part of the res gestae in order that the purpose of the compensation act be carried out."

It is the duty of the industrial commission not only to try claims for compensation judicially but to see to it that an injured employee and his dependents recover the compensation to which they are justly entitled under the act and to adapt its proceedings to achieve that purpose. The act is to be liberally construed to afford coverage of all cases reasonably within its purview. Lappinen v. Union Ore Co. *supra;* 6 Dunnell, Dig. & Supp. § 10421.

■ Relator contends that three written salesman's daily reports received in evidence do not constitute competent evidence upon which

---

[7]"* * * The Minnesota statute on this subject, Minn., G. S. 1923, sec. 4313 [M. S. A. 1949, § 176.54], requires that the findings of facts made by the commission on which its award is based must be made only on competent evidence, although the commission is at liberty to consider any evidence." 9 Minn. L. Rev. 577.

[8]Bushnell v. City of Duluth, 241 Minn. 189, 62 N. W. (2d) 813; Lappinen v. Union Ore Co. 224 Minn. 395, 29 N. W. (2d) 8; Elsenpeter v. Potvin, 213 Minn. 129, 5 N. W. (2d) 499; Corcoran v. Teamsters & Chauffeurs Joint Council, 209 Minn. 289, 297 N. W. 4; Anderson v. Russell Miller Milling Co. 196 Minn. 358, 267 N. W. 501; Anderson v. Coca Cola Bottling Co. 190 Minn. 125, 251 N. W. 3; Bliss v. Swift & Co. 189 Minn. 210, 248 N. W. 754; Cooper v. Mitchell, 188 Minn. 560, 247 N. W. 805; Walker v. Minnesota Steel Co. 167 Minn. 475, 209 N. W. 635; McDaniel v. City of Benson, 167 Minn. 407, 209 N. W. 26; Babich v. Oliver I. Min. Co. 157 Minn. 122, 195 N. W. 784, 202 N. W. 754.

[9]See, Jacobs v. Village of Buhl, 199 Minn. 572, 273 N. W. 245; Johnston v. W. S. Nott Co. 183 Minn. 309, 236 N. W. 466; Bliss v. Swift & Co. 189 Minn. 210, 248 N. W. 754.

[10]Discussed in 22 Minn. L. Rev. 391.

findings can be based. It also claims that these reports could not be considered by Dr. Grimes as a basis, in part, for his testimony. Relator prepared and furnished to its salesmen, including the deceased, printed forms entitled "Salesman Daily Report." The salesmen were required to fill out and submit these reports to the company each day. By means of these reports the relator was able to keep fully advised of the business done by its salesmen as well as their activities. It was also able to keep informed as to the conduct and whereabouts of its salesmen and as to whether they were properly furthering the best interests and business of the company. The printed heading on each report reads: "SALESMAN DAILY REPORT." Underneath this is a series of titles followed by blank spaces in which to insert the date, time of first and last call, "Number of calls today," "Number of Sales today," "Number of No Sales Calls," "Bushels of corn sold today," "Bushels of Oats sold today," "Bushels of Barley sold today," "Bushels of Flax sold today," "Bu. of Soybeans sold today," "Bushels of _____ today," "Speedometer start_____Finish_____," "Total down payments collected," "Total delivery collection," "Total Remittance to office." Immediately below this is the word "Remarks" followed by seven blank lines. Immediately under these seven lines appears this printed statement: *"I certify the above to be a correct analysis of today's activities."* Below this is a line for the salesman's signature under which line is written "Salesman Signature."

At the time that the deceased was found at the side of his truck on the road three of these daily reports were in the truck dated March 16, 17, and 18. On the report dated Thursday, March 16, the number "3" appears in the space opposite the title "Number of calls today." In the spaces designated for "Total Remittance to office" and "Total delivery collection" the figures "18.92" appear. After the word "Remarks" and immediately above "I certify the above to be a correct analysis of today's activities" the following appears:

"Had a slight stroke one which affected my legs. Maybe why I slid into ditch. Was unable leave car to get help. I shoveled too hard at last stop."

The reports dated Friday, March 17, and Saturday, March 18, both state opposite "Number of calls today" "O" and show that no collections were made on those days. Under the heading "Remarks" on the report of March 17 the following appears:

"Still stalled 1 mile east of Andes Station Corner, then take turn south up the road windin into hills. Still unable to get word to town. Only two cars passed today but would not stop. Getting colder. My feet are frozen to above ankles."

Under the heading "Remarks" on the report of March 18 the following appears:

"Am still stranded. Wind and snow. Folks here do not help others. Two passed today. Legs frozen higher. I'm getting scared. Haven't had food or water since Thurs. breakfast."

The reports were written in the printing of the deceased, and on the report of March 16 the deceased signed his name with his usual signature on the line provided for that purpose while on the other two he printed his name. In earlier daily salesman's reports submitted to the relator by the deceased, which reports were received in evidence by the referee, any unusual occurrences or activities were reported to the relator by the deceased under the heading "Remarks." Thus on reports submitted by the deceased to the relator during his employment we find such statements as: "Quit at noon because of severe cold," "Unable to go out because of cold in head and chest," "Didn't get back from Marshall because of weather conditions," "Roads blocked during afternoon," "Burned out my clutch plates about 11:30," etc. From the evidence it is apparent that it was an established practice for the deceased to make these explanations to the company on his daily reports as a part of his business activities.

Minnesota is one of a number of states which has adopted the uniform business records as evidence act. L. 1939, c. 78 (see, M. S. A. c. 600). Section 600.01 provides:

"The term 'business' shall include every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not."

Section 600.02 provides:

"A record of an act, condition, or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission."

Special provision is made by statute for the admission of book entries where the person entering them is deceased. Section 600.06 provides:

"Entries made in any book by a person authorized to make the same, he being dead, may be received as evidence in a case proper for the admission of such book as evidence on proof that the same are in his handwriting and in a book kept for such entries, without further verification."

At common law business records were admissible in evidence as an exception to the hearsay evidence rule on the theory and assumption that records kept in the general course of business usually are accurate and as such may be used as evidence of the matter recorded.[11] One of the purposes of the uniform business records as evidence act[12] is to enlarge the operation of this rule.[13] The uniform business records as evidence act is not confined to books of account and entries therein as it refers to a record of "an act, condition, or

[11]Loper v. Morrison, 23 Cal. (2d) 600, 145 P. (2d) 1; Douglas Creditors Assn. v. Padelford, 181 Ore. 345, 182 P. (2d) 390.

[12]The language of this act is of wider scope than the prior Minnesota statute, Mason St. 1927, § 9876, but because of the liberal policy followed by this court in the past in admitting business records, it does not make any drastic changes. See, 24 Minn. L. Rev. 958.

[13]Loper v. Morrison, *supra;* Thompson v. Machado, 78 Cal. App. (2d) 870, 178 P. (2d) 838; Douglas Creditors Assn. v. Padelford, *supra.*

event." The salesman's daily reports under consideration here appear to have been made in the regular course of employment as required by the act. It is a well-settled rule of law that the foundation for documentary evidence in court actions is largely within the discretion of the trial court.[14] And it follows that when the document has been received in evidence in the exercise of that discretion it becomes competent evidence for use in the case.

Under the circumstances present here we conclude that it was within the discretion of the commission to determine that a proper, sufficient, and adequate foundation had been laid to establish said salesman's daily reports of March 16, 17, and 18 as competent evidence in the case within the meaning of § 176.411 as coming within the exception to the hearsay rule as business entries. It was, therefore, proper for the commission to consider said daily reports in making its findings, and it was also proper for Dr. Grimes to use such reports as a basis, in part, for his opinion. While the statement in the report "Had a slight stroke one which affected my legs" embodies a medical opinion, the portion "which affected my legs" is a statement indicating a disability of deceased's legs, a condition well within the knowledge of the deceased himself. Strokes are fairly common and their symptoms, to some extent at least, known to and understood by the average layman. Under the liberal rule applicable to compensation cases, we think it was within the discretion of the commission to consider the statement as competent evidence in the case.[15]

Since we have concluded that the three salesman's daily reports were properly to be considered as competent evidence in the case, it becomes unnecessary for us to consider whether the note to the "folks" could be considered as competent evidence also, since the material portions of the note and the daily reports are substantially the same.

---

[14]Topinka v. Minnesota Mut. L. Ins. Co. 189 Minn. 75, 248 N. W. 660, 95 A. L. R. 739; Schoonover v. Prudential Ins. Co. 187 Minn. 343, 245 N. W. 476; Garbisch v. American Ry. Exp. Co. 177 Minn. 494, 225 N. W. 432.

[15]See, Swadner v. Schefcik, 124 Minn. 269, 144 N. W. 958.

486

Under the evidence it appears to us that whether deceased suffered an accidental injury arising out of and in the course of his employment presented an issue of fact for determination by the commission.

■ Since relator's contention that respondent is not entitled to recover compensation benefits, as a matter of law, has been rejected by what has already been said, we now consider relator's alternative suggestion that the case be remanded for more detailed findings of the facts. No claim is made that the proceedings should be remanded for further evidence, and it is clear from the record that the facts concerning the death of the decedent and his activities have been thoroughly explored.

The referee found that the deceased suffered an accident arising out of and in the course of his employment which resulted in his death and awarded respondent compensation benefits. On appeal to the commission the findings and determination of the referee were affirmed. Thereafter relator petitioned the commission for additional specific findings as to why the truck stopped or became stalled; why the decedent remained with it instead of going for help; why he did not summon aid from persons who were passing by; whether the commission relied upon presumptions and if so which ones; and whether he suffered any physical injury or ailment which accounted for his failure to help himself. The commission amended two of its findings and reaffirmed the remainder. In the two amended findings it found that on March 16, 17, 18, and 19 deceased was in the employ of the relator and that on March 16, while so employed, he parked relator's truck and, being unable to remove it, was forced to remain in it and, because of the inclemency of the weather, suffered a freezing accident resulting in his death. Relators then moved for additional findings as to why the deceased was unable to move the truck and why he was required to remain in it, which motion was denied.

The commission by statute is required to make findings of fact. The statute, however, does not provide the extent to which the findings of fact must be stated. This is left for judicial construction.[16]

[16]M. S. A. 1949, § 176.50, which was in effect when this action was commenced, was repealed by L. 1953, c. 755, § 83, and M. S. A. 176.371 was

In Kennedy v. Thompson Lbr. Co. 223 Minn. 277, 26 N. W. (2d) 459, we held that a decision of the commission should contain a sufficient statement of facts to form a basis for the conclusions of law. And in Manthe v. Employers Mut. Cas. Co. 239 Minn. 368, 58 N. W. (2d) 758, we held that the findings of the commission should indicate briefly what material facts in dispute were found to be true and, where the evidence indicated several causative conditions, which condition was found to be true cause. In Ruud v. Minneapolis St. Ry. Co. 202 Minn. 480, 481, 484, 279 N. W. 224, 225, 226, relator challenged the sufficiency of the findings which were stated in the language of the statute,[17] and we there stated:

"* * * We regard such finding as an ultimate fact required to be determined by the commission. If other specific facts were desired by relator to be found, application should have been made to the commission for such finding."

In Senske v. Fairmont & Waseca Canning Co. 232 Minn. 350, 361, 45 N. W. (2d) 640, 648, we pointed out the importance of adequate findings, stating:

"* * * Disability settlements deserve careful consideration by the commission and by this court, and when their approval is denied the grounds for the denial should be stated. If the reasons for the denial are given, the parties may find little cause for seeking a review of the commission's decision; thus the delay and expense of an appeal may be avoided. Furthermore, reviews by this court will be simplified and expedited when the basis for the commission's action is indicated and presented with clarity."

Where a record presented for review does not contain sufficient findings, the court may remand the cause to the commission for further proceedings.[18]

---

enacted (L. 1953, c. 755, § 54), which is now in effect. For a discussion of this subject, see Annotation, 146 A. L. R. 123.

[17]"That on July 14, 1936, Ole John Ruud sustained an accidental injury to his person arising out of and in the course of his said employment resulting in his death on July 16, 1936."

[18]M. S. A. 176.481; see, O'Rourke v. Percy Vittum Co. 166 Minn. 251,

While it seems clear that the motion of the relator should have been granted so as to indicate briefly what material facts in dispute were found to be true, we have concluded that the failure of the commission to do so was not prejudicial to the relator since the ultimate facts entitling respondent to recover were found. This is not a case in which a remand to the commission would result in the taking of additional testimony, since from the record it appears clear that all of the available evidence was introduced and was before the commission when its decision was made. The commission, in finding that the deceased was, on March 16, 17, 18, and 19 in the employ of the relator, in awarding respondent compensation benefits, and in finding that the deceased was forced to remain in the truck during those days, necessarily rejected relator's claim that the deceased had stepped outside of his employment and had stopped the truck beside the road and remained there for a reason personal to himself. Through its findings it, of necessity, decided that the deceased, under the evidence was, during those days, suffering from a physical disability which prevented him from leaving the truck for it is undisputed that on the afternoon of March 16 the temperature was above freezing and there is nothing in the record to in any way indicate that the weather on any of the days thereafter was so severe as to require the deceased to remain in the truck. We hold that implicit in the findings of the ultimate facts by the commission is a finding that deceased was unable to leave the truck or to summon help because of a physical disability; that because of that and the inclemency of the weather he suffered a freezing accident resulting in his death. This proceeding has been pending since October 1950 when the first testimony was taken. Since we are satisfied that remanding the case would not change the result, we have concluded that the proceeding should come to an end.

We take this opportunity, however, to again point out to the commission the duty of indicating briefly what material facts in

207 N. W. 636; Olson v. Griffin Wheel Co. 218 Minn. 48, 15 N. W. (2d) 511, 156 A. L. R. 1338; Kennedy v. Thompson Lbr. Co. *supra;* Berg v. Sadler, 235 Minn. 214, 50 N. W. (2d) 266; Manthe v. Employers Mut. Cas. Co. *supra.*

dispute are found to be true and, where the evidence indicates several causative conditions, which condition was found to be the true cause. Fairness to counsel and to this court requires that to be done. Unless it is done reversals may be expected.

Other points raised by relators have been considered but are not deemed of sufficient importance to require discussion. Respondent is allowed $300 attorney's fees in this court.

Affirmed.

MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.

