## STATE DEPARTMENT OF EMPLOYMENT SECURITY v. JOHN ZROKER.

159 N. W. (2d) 190.

May 17, 1968—No. 40,765.

*Robert E. Oliphant,* for relator.

*Douglas M. Head,* Attorney General, and *Peter C. Andrews,* Assistant Attorney General, for respondent.

KNUTSON, CHIEF JUSTICE.

Certiorari to review a decision of the Department of Employment Security.

Relator, John Zroker, was employed by the Central Roofing Company of Minneapolis, when there was work available, from 1951 until 1964, earning an average of $4.34 an hour.

In July 1963 it was discovered by X rays taken in Minneapolis that he had a spot on his lung. Thereafter he was examined at the Mayo Clinic in Rochester, and the doctors there concluded that the spot was caused by "calcium in the lesion." They assured relator that there was no malignancy and advised him to have periodic X rays taken because occasionally such healed areas can break down. They informed him that they expected no trouble in his case.

Relator remained on his job, except for a brief absence for these examinations, until December 1963, when he was temporarily laid off because of lack of work. He began receiving unemployment compensation payments on December 18, 1963, which continued until September 1964, when he was recalled by his employer and went back to work. In November 1964 he was off the job temporarily on account of sickness but during this period he received no unemployment payments. In January 1965 he notified his employer that he was ready to return to work, but was told that there was no work available at that time. From March 3, 1965, to May 26, 1965, he received $284 in unemployment

compensation benefits, and after the latter date he was no longer eligible for such payments.

In either May or June 1965 relator contacted the Industrial Commission relative to filing a claim for workmen's compensation based on disability caused by the lung difficulty referred to, but this application bore no fruit as he was unable to establish a causal relationship between the disability and his employment. After a further examination he again contacted the Industrial Commission in the fall of 1965 and was slated to have a hearing on April 15, 1966, at which time he and his employer's insurer effected a settlement under which he was paid $3,000, supposedly representing about 66 weeks of temporary total disability at the rate of $45 per week, plus medical expenses in the sum of $597.50. No particular 66-week period is specified in the settlement award, but it provided: "Said payments, when made, shall constitute full, final and complete settlement of any and all claims, past, present or future, arising out of alleged personal injuries of July, 1963 or at any other time material herein while in the employ of the above-named employer." Relator was assisted in effecting this settlement by one John R. Parker, an Industrial Commission attorney.

On June 20, 1966, the Department of Employment Security notified relator of a department determination that, due to errors, he had received unwarranted benefit payments of about $1,600, and made a demand upon him to reimburse the department in that amount. After appeals through the Department of Employment Security's appellate section and the commissioner of employment security, all of whom affirmed the decision of the referee, he seeks review here by writ of certiorari.

Relator raises three questions: (1) Is the Department of Employment Security estopped from claiming reimbursement due to the assurances given by John Parker that the unemployment payments relator had received would not affect the settlement he had made with his employer's insurer? (2) Does Minn. St. 268.18, subd. 1, deprive relator of his property without due process of law? (3) Does the evidence sustain the findings of the Department of Employment Security requiring relator to return the benefits received as unemployment compensation?

The statute under which the department claims reimbursement is Minn. St. 268.08, which provides in part:

"Subd. 3. An individual shall not be eligible to receive benefits for any week with respect to which he is receiving, has received, or has filed a claim for remuneration in an amount equal to or in excess of his weekly benefit amount in the form of

* * * * *

"(3) compensation for loss of wages under the workmen's compensation law of this state or any other state or under a similar law of the United States * * *."

With respect to the claim of estoppel, all that need be said is that ordinarily the state is not estopped by actions of its officials when acting in a governmental capacity. Board of Education v. Sand, 227 Minn. 202, 34 N. W. (2d) 689; The Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244.

We need not determine here whether estoppel applies, nor do we determine the question of whether relator has been deprived of due process of law, because we have come to the conclusion that the evidence does not sustain the department's determination that under § 268.08, subd. 3(3), relator is required to return the unemployment compensation payments which he has received.

Before this statutory provision can be applied, it must appear that payments for unemployment compensation and payments for workmen's compensation overlapped, or were made for the same period of time. There is no evidence in this case establishing that proposition. As a matter of fact, the findings of the appeal tribunal of the Department of Employment Security, which were affirmed by the commissioner, contain this statement:

"* * * The decision in this case may seem harsh; however, the referee, in his award, clearly states that the award shall be applied to the past, present, as well as future, claims of the claimant. The claimant, in his claim against his previous employer, contended that he should be compensated for temporary and total disability during the periods from August 13, 1963 through August 26, 1963; December 24, 1963

through September 21, 1964 and from and after November 24, 1964. Obviously it is impossible to determine what percentage of the award applies to the future."

By the same token, it is obviously impossible to determine what percentage of the award applied to the past; and in the absence of proof as to what part, if any, of the workmen's compensation award would apply to the period during which relator was paid unemployment compensation, the statute cannot apply.

It appears to us that, so far as the workmen's compensation payments are concerned, relator and his employer's insurer simply settled the case and drew a release which would cover all claims that might arise for this claimed disability, without any determination or specification as to what period of disability it should apply to. On that kind of evidence it simply cannot be found that the compensation payments in whole or in part applied to the period during which relator was paid unemployment compensation. As a matter of fact, he continued to work when work was available. Unemployment compensation is based on the assumption that the employee is available for work on the labor market, whereas workmen's compensation is paid on the theory that he is disabled from working.

Both relator and the department seem to analyze the settlement made here under Minn. St. 176.165, which provides:

"The amounts of compensation payable periodically may be commuted to one or more lump sum payments only by order of the commission and on such terms and conditions as the commission prescribes. The commission shall not authorize any lump sum payment until it has received from the Bureau of Workmen's Rehabilitation a recommendation as to the advisability of granting the same, but such recommendation is not binding on the commission. In making these commutations the lump sum payments shall amount, in the aggregate, to a sum equal to the present value of all future instalments of the compensation calculated on a five percent basis."

Arguing from this section, the department contends that the award here was not commuted to present value, and thus could not have

been an award of future installments. But it is doubtful that this statutory provision has any application. The settlement here was undoubtedly of a disputed claim made under § 176.521, subd. 1, which reads:

"An agreement between an employee or his dependent and the employer or insurer to settle any claim for compensation under this chapter is valid where it has been executed in writing and signed by the parties, and the commission has approved the settlement and made an award thereon."

See, Senske v. Fairmont & Waseca Canning Co. 232 Minn. 350, 45 N. W. (2d) 640. Since the award was a settlement rather than a lump-sum payment, the failure to commute the award to present value is understandable, for a settlement in its very nature is an agreement for present payment.

We are therefore of the opinion that in the absence of proof that the workmen's compensation settlement covered a period during which relator was paid unemployment compensation the evidence fails to sustain any overlapping. Without such proof there can be no right to reimbursement. In the light of the appeal tribunal's admission that it is impossible to tell what percentage of the award applies to the future and what percentage applies to the past, we think relator is entitled to a reversal rather than a remand.

Reversed.