Cheryl A. SHANAHAN, Relator,

v.

DISTRICT MEMORIAL HOSPITAL, Commissioner of Jobs and Training, Respondents.

No. C8–92–1564.

Court of Appeals of Minnesota.

Feb. 23, 1993.

Kevin T. Slator, Herbert, Welch, Humphreys & Grindberg, P.A., Forest Lake, for Cheryl A. Shanahan.

Kent E. Todd, St. Paul, for Commissioner of Jobs and Training.

Considered and decided by HUSPENI, P.J., and SCHUMACHER and AMUNDSON, JJ.

## OPINION

SCHUMACHER, Judge.

After her employment with respondent District Memorial Hospital was terminated, relator Cheryl A. Shanahan filed a claim with the Department of Jobs and Training for unemployment benefits. A claims adjudicator determined that she was ineligible for benefits and, after a hearing, a referee affirmed. Shanahan appealed to respondent Commissioner of Jobs and Training and a Commissioner's representative affirmed. By writ of certiorari, Shanahan appeals the Commissioner's representative's decision. We affirm.

## FACTS

Shanahan worked as a chemical dependency counselor at District Memorial Hospital in Forest Lake, Minnesota from November 1988 until March 1992. Shanahan worked an average of 64 to 80 hours per two-week pay period. In November 1991 her hours were reduced, and she worked from 48 to 68 hours per pay period.

In March 1992, Shanahan's supervisor informed her that Shanahan's position was being terminated and a new job was being created for which she could interview. The hospital decided to combine Shanahan's position with that of another counselor whose hours had been similarly reduced, leaving one position with 64–80 hour pay periods. Only one counselor would be necessary, and both counselors were given the opportunity to interview for the position. Shanahan refused the interview.

The Commissioner's representative adopted the following findings of fact of the referee:

(1) The claimant began working at the above-named hospital as a chemical dependency counselor on November 20, 1988. She normally worked from 64 hours to 80 hours per pay period.

(2) In early 1992 the claimant was averaging about 60 hours per pay period.

(3) The employer proposed to combine two positions that together would provide at least 64 hours of work per pay

period, but probably closer to 80 hours. The pay for the combined position would be the same as what the claimant had been earning, which was $13.10 per hour.

(4) The employer had two potential candidates for the combined position in mind, the claimant being one of them. The employer invited the claimant to interview to the combined position. Had she done so, it is virtually certain that the claimant would have been given the position.

In addition, the Commissioner's representative found:

The claimant turned down the opportunity to interview for the combined position on March 11, 1992.

The Commissioner's representative then concluded that Shanahan quit without good cause attributable to the employer.

The Commissioner's representative explained that its decision was supported by the record because:

The claimant was told that her position as it currently existed would be affected by this consolidation, however, she was encouraged to interview for the combined position. The claimant chose not to interview for the combined position and instead terminated her employment. * * * Rather than to pursue this continued opportunity for employment with the employer herein, the claimant chose to become unemployed. We find that the claimant's decision to terminate her employment was made precipitously and was without good cause attributable to the employer.

On appeal, Shanahan contends that the record does not support the determination that she voluntarily terminated her employment without just cause attributable to the employer.

## ISSUE

Did the Commissioner's representative err in deciding that Shanahan voluntarily discontinued her employment without good cause attributable to the employer?

## ANALYSIS

A person will be disqualified from receiving unemployment benefits if he or she "voluntarily and without good cause attributable to the employer discontinued employment with such employer." Minn. Stat. § 268.09 subd. 1(a) (1990). The question of whether an employee was voluntarily or involuntarily terminated is a question of fact for the Commissioner. *Larson v. Pelican Lake Nursing Home,* 353 N.W.2d 647, 648 (Minn.App.1984). Findings of fact must be reviewed in the light most favorable to the decision and will not be disturbed if there is evidence reasonably tending to sustain the findings. *Armar Corp. v. Malinski,* 362 N.W.2d 10, 12 (Minn.App. 1985).

The test for determining whether an employee has voluntarily quit is whether the employee directly or indirectly exercises a free-will choice to leave the employment. *Anson v. Fisher Amusement Corp.,* 254 Minn. 93, 98, 93 N.W.2d 815, 819 (1958); *Seacrist v. City of Cottage Grove,* 344 N.W.2d 889, 891 (Minn.App.1984). The policy provision of the unemployment compensation statute provides that unemployment compensation is to be used "for the benefit of persons unemployed through no fault of their own." *See* Minn.Stat. § 268.03 (1990).

Shanahan first argues that the finding that it is virtually certain that she would have been hired for the new position had she interviewed is not supported by the record. This finding is not essential to the conclusion that Shanahan voluntarily quit and did not prejudice Shanahan. Therefore, we decline to consider whether it is supported by the evidence. *See Lundin v. Stratmoen,* 250 Minn. 555, 560, 85 N.W.2d 828, 833 (1957) (no consideration given to alleged errors when no prejudice could possibly have resulted).

Shanahan argues that the finding of voluntary termination is not supported by the record. We disagree. The record shows that, although the hospital terminated Shanahan's specific position, her supervisor asked her to interview for an equiva-

lent position and Shanahan refused. Although there was no guarantee that Shanahan would have received the new position, the fact that she refused to interview supports a finding of voluntary termination. The hospital terminated Shanahan's position but it did not terminate Shanahan. Had Shanahan interviewed for the new position and not received it, then her termination would have been involuntary. The evidence shows, however, that Shanahan voluntarily quit without pursuing the opportunity for continued employment with the hospital.

Shanahan next argues that, even if her termination was voluntary, it was with good cause attributable to the employer and that therefore she is entitled to benefits. *See* Minn.Stat. § 268.09 subd. 1(a). She alleges that she reasonably believed that her position was terminated or would soon be terminated and that therefore she had good cause to quit.

 The employee who quits has the burden of proving good cause to resign that is attributable to the employer. *Zepp v. Arthur Treacher Fish & Chips, Inc.*, 272 N.W.2d 262, 263 (Minn.1978). Whether a voluntary termination is made with good cause attributable to the employer is a question of law which this court may independently review. *Ryks v. Nieuwsma Livestock Equip.*, 410 N.W.2d 380, 382 (Minn.App.1987); *Porrazzo v. Nabisco, Inc.*, 360 N.W.2d 662, 664 (Minn.App.1985).

The test for whether there was good cause attributable to the employer for the termination is whether the reason for quitting is compelling, real and not imaginary, substantial and not trifling, reasonable and not whimsical and capricious. *Ferguson v. Department of Employment Servs.*, 311 Minn. 34, 44 n. 5, 247 N.W.2d 895, 900 n. 5 (1976); *Kratochwill v. Los Primos*, 353 N.W.2d 205, 207 (Minn.App. 1984). The courts of this state have held that unreasonable or excessive demands placed on the employee by the employer are good cause for termination attributable to the employer. *See Zepp*, 272 N.W.2d at 263; *Porrazzo*, 360 N.W.2d at 663. In both *Zepp* and *Porrazzo* the court noted that

the employee attempted to continue the employment in increasingly difficult circumstances. *See Zepp*, 272 N.W.2d at 263; *Porrazzo*, 360 N.W.2d at 664.

We conclude that termination of Shanahan's position, combined with the opportunity to interview for an equivalent position, did not give her good cause to quit. Shanahan made no attempt to continue her employment with the hospital, even though she had the opportunity to do so.

### DECISION

Affirmed.