**Reed M. ROLOFF, Relator,**

v.

**COMMISSIONER OF the DEPART-MENT OF EMPLOYMENT AND ECONOMIC DEVELOPMENT, Respondent.**

No. C1–02–2204.

Court of Appeals of Minnesota.

Aug. 26, 2003.

Ann Juergens, Henry Wang, Certified Student Attorney, William Mitchell Law Clinic, St. Paul, for relator.

Lee B. Nelson, M. Kate Chaffee, Minnesota Department of Employment and Economic Development, St. Paul, for respondent.

Considered and decided by HALBROOKS, Presiding Judge, SHUMAKER, Judge, and G. BARRY ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Relator brings this certiorari appeal challenging the determination made by the Employment and Economic Development Commissioner's representative that relator was ineligible to receive unemployment benefits. Relator argues it was error for the representative to conclude that under Minn.Stat. § 268.085, subd. 4(c) (2002), an application for primary social security disability benefits bars receipt of Minnesota unemployment benefits.[1] We affirm the decision of the commissioner's representative.

## FACTS

Prior to suffering a massive stroke in 1998, relator Reed M. Roloff lived in Florida and was employed as a biomedical engineer designing custom wheelchair equipment. The stroke caused Roloff to experience short-term memory loss, kidney disease, vision problems, loss of strength on his left side, and allergy-related asthma. Such problems such as difficulty concentrating, lack of stamina and fatigue have made it difficult for Roloff to function in the workplace. And as a result of the stroke, Roloff is unable to lift more than 20 pounds. Due in part to the complications caused by the stroke, Roloff decided to move to Minnesota to live with his parents. Roloff began receiving disability benefits from the Social Security Administration (SSA) in August 1998. In June 1999, the SSA determined Roloff was no longer disabled and discontinued the benefits.

Roloff had considerable difficulty maintaining employment after losing the disability benefits. Between June 1999 and November 2001, Roloff had four jobs. In December 2001 Roloff began receiving unemployment compensation benefits. Roloff also sought help obtaining new employment from various social service agencies. Many of these providers suggested Roloff once again apply for social security disability benefits. Based on this advice, Roloff applied for disability benefits on March 22, 2002. The SSA denied Roloff's application in May 2002.

On May 23, 2002, Roloff was notified by the State of Minnesota that he was no longer eligible to receive unemployment compensation because he had applied for

---

1. The parties do not dispute that relator's application was for primary social security disability benefits, and thus we refer to primary social security disability benefits and social security disability benefits interchangeably.

disability benefits. One week later, Roloff was informed that because he had received unemployment compensation while seeking disability benefits he had been "overpaid" and must reimburse the state for the unemployment compensation he received while seeking disability benefits from SSA.

Roloff decided to appeal both SSA's denial of his request for disability benefits and the state's determination that he was ineligible for unemployment compensation and demand for reimbursement.[2] Roloff appealed the SSA decision on July 23, 2002, and on July 31 he was informed that the decision to deny him disability benefits had been affirmed. Roloff decided not to pursue his claim for disability benefits any further.

In August 2002, following a hearing on Roloff's appeal of the state's determination of ineligibility and its demand for repayment, an unemployment law judge found that because Roloff was seeking social security disability benefits he was ineligible to receive unemployment compensation between March 17, 2002, and August 3, 2002. The unemployment law judge also ordered Roloff to repay the money he received when ineligible.

The commissioner's representative upheld the ineligibility determination and ordered Roloff to reimburse the state $1,735 for unemployment compensation he received while ineligible. This certiorari appeal followed.

## ISSUE

Did the commissioner's representative err in concluding that relator's application for primary social security disability benefits made him ineligible for unemployment compensation during the period relator was actively seeking social security benefits?

## ANALYSIS

■■■ Whether an appellant was properly disqualified from receiving unemployment compensation is a mixed question of law and fact. *Carlson v. Augsburg College,* 604 N.W.2d 392, 393 (Minn.App.2000). Findings of fact made by the commissioner's representative are reviewed in the light most favorable to the representative's decision and are not to be disturbed if there is evidence to support them. *Ress v. Abbott Northwestern Hosp., Inc.,* 448 N.W.2d 519, 523 (Minn.1989). But the representative's determination that a person was ineligible to receive unemployment compensation is a question of law, which is reviewed de novo. *Id.*

■■■ The facts are not in dispute here. Both parties agree that Roloff was receiving unemployment compensation when he applied for social security disability benefits. But Roloff challenges the representative's conclusion that he was ineligible for unemployment compensation while he was seeking disability benefits.

At the center of this controversy is Minn.Stat. § 268.085, subd. 4(c) (2002), which provides in part

an applicant shall be ineligible for unemployment benefits for any week with respect to which the applicant is receiv-

---

**2.** Roloff actually appealed three separate Department of Economic Security (DES) decisions: (1) the initial determination of ineligibility (DES No. 10616–02); (2) determination that Roloff had been overpaid between March and April 2002 (DES No. 10617–02); and (3) the determination that he had been overpaid in April and May 2002 (DES No. 10618–02).

As of July 1, 2003, the Commissioner of Economic Security is now known as the Commissioner of Employment and Economic Development and the Minnesota Department of Economic Security is now known as the Minnesota Department of Employment and Economic Development.

ing, has received, *or has filed for* primary social security disability benefits. (emphasis added).

▉ Roloff argues that, despite the specific language of the statute, the mere fact that he applied for disability benefits does not preclude him from receiving unemployment compensation. When interpreting the meaning of a statute, courts are to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2002); *Boutin v. LaFleur,* 591 N.W.2d 711, 715 (Minn.1999). "Every law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16 "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000) (citation omitted). "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Id.* (citation omitted). "When the words of a law * * * are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing [its] spirit." Minn.Stat. 645.16.

Contrary to Roloff's thorough argument, the meaning of the statute is clear. If a person has filed for social security benefits, that person is not eligible to receive unemployment compensation. Minn.Stat. § 268.085, subd. 4(c). The statute does not define what acts constitute filing for social security benefits. But "file" has generally been defined as "enter[ing] (a legal document) on public official record." *The American Heritage Dictionary* 680 (3d ed.1992). This definition encompasses Roloff's act of applying for disability benefits.

Roloff was receiving unemployment compensation when he applied for disability benefits. In light of this undisputed evidence and the plain language of Minn.

Stat § 268.085, subd. 4(c), we must conclude that the representative's decision was correct and should be affirmed. Similarly, because the meaning of the statute is plain on its face, Roloff's argument that the representative's interpretation would lead to absurd results and his suggestion that this court examine the statute's legislative history are misplaced. *See Mueller v. Comm'r of Economic Sec.,* 633 N.W.2d 91, 93 n. 1 (Minn.App.2001) ("Courts should turn to a statute's legislative history to determine how it should be construed only when the language of the statute is ambiguous.").

Roloff raises a series of additional challenges to the representative's decision. In particular, Roloff's argues that the representative ignored controlling legal authority when interpreting Minn.Stat. § 268.085, subd. 4(c). Roloff relies on *Dep't. of Employment. Sec. v. Zroker,* 280 Minn. 286, 159 N.W.2d 190 (1968), to support this argument.

In *Zroker,* the supreme court interpreted a statutory provision very similar to the one at issue here. The *Zroker* court was asked to determine whether receipt of a workers' compensation settlement precludes receipt of unemployment payments in light of Minn.Stat. § 268.08, subd. 3, which states

> [a]n individual shall not be eligible to receive benefits for any week with respect to which he is receiving, has received, *or has filed a claim* for remuneration in an amount equal to or in excess of his weekly benefit amount in the form of
>
> (3) compensation for loss of wages under the workmen's compensation law of this state or any other state or under a similar law of the United States * * *.

*Zroker,* 280 Minn. at 289, 159 N.W.2d at 192 (quotation omitted) (emphasis added).

Ultimately, the *Zroker* court did not decide whether receipt of the settlement disqualified an applicant for unemployment compensation purposes because there was no evidence of receipt of workers' compensation proceeds while receiving unemployment compensation. *Id.*

Roloff argues that because he did not *receive* disability benefits while he was receiving unemployment compensation, similar to *Zroker,* he should not be ineligible for benefits. But there are significant differences between this case and *Zroker.* In *Zroker,* the relator received a lump-sum settlement payment, representing a 66–week period of disability. *Id.* at 288, 159 N.W.2d at 191. But the relator only sought the workers' compensation settlement after his eligibility for unemployment compensation had expired. *Id.* And although the relator received a payment representing more than five years of disability, there was no evidence that the period of disability overlapped with the period during which he received unemployment compensation. *Id.* at 289, 159 N.W.2d at 192. Here, because Roloff actually sought the disability benefits while receiving unemployment compensation, *Zroker* is neither controlling nor helpful.

Similarly, Roloff's reliance on *Cleveland v. Policy Mgmt. Sys., Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999), is also misplaced. In *Cleveland,* the United States Supreme Court held that the receipt of social security disability insurance (SSDI) did not automatically preclude a claim under the Americans with Disabilities Act (ADA). *Id.* at 807, 119 S.Ct. at 1604. The Supreme Court in *Cleveland* was addressing the interplay between two federal statutes. Here, the issue is simply limited to the scope of a single Minnesota statute.

*Cleveland,* at best, is helpful simply to suggest an alternative route the Minnesota legislature could have taken. But this road not taken does not alter the clear legislative mandate. The legislature chose to disqualify a person who receives or applies for unemployment benefits while applying for social security benefits. Minn. Stat. § 268.085, subd. 4(c). The legislature also elected to make these applicants ineligible even though they may never receive a social security disability award, leaving the applicant without any means of assistance. This may be a less than perfect public policy choice but it "does not * * * render the statute invalid." *Shreve v. Dep't. of Econ. Sec.,* 283 N.W.2d 506, 508 (Minn.1979) (quoting *Idaho Dep't. of Employment v. Smith,* 434 U.S. 100, 101, 98 S.Ct. 327, 328, 54 L.Ed.2d 324 (1977)).

Finally, Roloff argues that the commissioner's representative took subdivision 4(c) out of context from the rest of the statute. Roloff contends that because he did not receive disability benefits he was not required to reimburse the state for the unemployment compensation he received while ineligible. *See* Minn.Stat. § 268.085, subd. 4(e) (stating "any applicant who receives primary social security old age or disability benefits for periods that the applicant has been paid unemployment benefits shall be considered overpaid those unemployment benefits * * *."). But Roloff's argument ignores the requirement in Minn.Stat. § 268.18, subd. 1 (2002), that any improper payment of funds made to an applicant must be repaid even if the payment resulted from an error made by the applicant or an employee of the department. To interpret Minn.Stat. § 268.085, subd. 4, as Roloff suggests would be to disregard the specific direction of the legislature as set out in Minn.Stat. § 268.18.

## DECISION

Because Minn. Stat § 268.085 provides that applying for social security disability

benefits bars contemporaneous receipt of unemployment benefits, the commissioner's representative properly concluded that Roloff was disqualified from receiving unemployment benefits.

**Affirmed.**