# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-1576

Nita Posey,
Relator,

vs.

Securitas Security Services USA, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed May 9, 2016**
**Reversed**
**Randall, Judge**[*]

Department of Employment and Economic Development
File No. 33659969-3

Jeffrey M. Markowitz, Sarah E. Bushnell, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, Minnesota (for relator)

Securitas Security Services USA, Inc., c/o Talx UCM Services Inc., St. Louis, Missouri (respondent)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Rodenberg, Presiding Judge; Hooten, Judge; and Randall, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**S Y L L A B U S**

When an employee of an employer informs the employer and the employer's client that the employee is unable to complete a job assignment because of a family crisis and tells the employer that the employee will reengage with the employer upon resolution of the family crisis, the employee has not quit employment under Minn. Stat. § 268.095, subd. 2(a) (2014).

**O P I N I O N**

**RANDALL**, Judge

Relator Nita Posey challenges the determination of an unemployment-law judge (ULJ) that she is ineligible for benefits because she quit her employment with Securitas Security Services USA Inc. (Securitas) and that no exceptions to ineligibility apply. She argues that she did not quit her employment, that Securitas discharged her, and that she did not engage in employment misconduct by taking time off to address her family's homelessness with notice to her employer. The evidence in the record does not establish that Posey made the decision to quit her employment at Securitas. We reverse.

**FACTS**

Posey worked for Securitas from October 2014 to March 10, 2015. Securitas sent Posey on a job assignment involving security data entry at a U.S. Bank location. U.S. Bank is a client of Securitas. Steven McGuire is the manager of Securitas's U.S. Bank account. Posey is a mother of two school-age children who have chronic asthma and allergies. Posey generally contacted Cynthia Vang, Securitas's contact person at U.S. Bank, when she needed to request time off from her assignment for medical reasons, including taking her

2

daughter to the emergency room and keeping her quarantined for 24 hours because of severe strep throat. Her requests for time off were granted.

On the morning of March 9, 2015, Posey and her family were evicted from their residence. The sheriff told Posey and her family that they had to move that day. Soon after learning of the eviction, Posey called Vang. When Vang did not answer, Posey sent her a text message telling her that she had a family emergency, that she would be absent from work, and that Vang could call her if she wanted more details. Vang, in a text message, replied "Okay."

At approximately 3:00 p.m. that day, McGuire and Posey spoke on the phone. McGuire explained that U.S. Bank was concerned about the number of days she had taken off in the past and that U.S. Bank needed someone who could be there Monday through Friday from 8:00 a.m. to 4:30 p.m. McGuire asked Posey if it would be a problem for her to comply with U.S. Bank's attendance requirement. Posey told McGuire that it would not be a problem. Posey went to work on March 10 as scheduled.

On the morning of March 11, Posey felt "overwhelmed" trying to address her family's housing situation, care for her children, and comply with U.S. Bank's attendance requirement at her job. Posey called Vang and sent her a text message describing what had happened and explaining that while Posey "knew that she needed [her] to be there," she "couldn't be there right now." Vang replied to Posey's text message, expressing her condolences and wishing her good luck. Posey called McGuire and, when he did not answer, sent him a text message providing him the same information she had provided to

3

Vang, though she also informed him that she "would be getting back in contact with him." McGuire did not respond to this text message.

Posey did not perform any work for U.S. Bank or Securitas after March 10. On March 18, Securitas sent Posey a letter confirming her separation of employment. The letter stated that she had "quit with no notice" and instructed her to return her uniforms and access badges.[1]

On June 15, 2015, the Minnesota Department of Employment and Economic Development (DEED) denied Posey's application for unemployment benefits on the grounds that she had been discharged for employment misconduct. Posey appealed this initial ineligibility determination and a ULJ held a hearing on June 30, 2015, at which Posey, McGuire, and Christa Erdmann, an employee relations manager at Securitas, testified. On July 2, the ULJ determined that Posey had quit employment and was therefore ineligible for benefits and no exception to ineligibility applied. The ULJ affirmed this decision on September 8, after Posey filed a request for reconsideration. Posey appeals by petition for a writ of certiorari.

**ISSUE**

Did the ULJ err in determining that relator quit her employment?

---

[1] Securitas's March 18 letter stated that "[a]s of 3/10/15, you quit with no notice which resulted in separation of employment." This date was apparently a mistake because Posey worked on March 10, 2015, and did not send the text message at issue until March 11.

**ANALYSIS**

"Whether an appellant was properly disqualified from receiving unemployment compensation is a mixed question of law and fact." *Roloff v. Comm'r of Dep't of Emp't & Econ. Dev.*, 668 N.W.2d 12, 14 (Minn. App. 2003), *review denied* (Minn. Nov. 18, 2003). The question of whether an employee was discharged or voluntarily quit is a question of fact. *Stassen v. Lone Mountain Truck Leasing, LLC*, 814 N.W.2d 25, 31 (Minn. App. 2012). The determination that an applicant is ineligible for unemployment benefits based on the facts of the case is reviewed de novo. *See id.* at 30-31. We may "affirm the decision of the unemployment law judge or remand the case for further proceedings," or "reverse or modify the decision if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are . . . unsupported by substantial evidence in view of the entire record as submitted." Minn. Stat. § 268.105, subd. 7(d)(5) (Supp. 2015). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Minneapolis Van & Warehouse Co. v. St. Paul Terminal Warehouse Co.*, 288 Minn. 294, 299, 180 N.W.2d 175, 178 (1970) (quotation omitted).

*Standard for Determining Whether an Employee Quit*

Posey and DEED dispute the proper standard for determining whether an employee voluntarily quit or was terminated. Posey argues that "'[t]he test for determining whether an employee has voluntarily quit is whether the employee directly or indirectly exercises a free-will choice to leave the employment,'" quoting *Shanahan v. Dist. Mem'l Hosp.*, 495 N.W.2d 894, 896 (Minn. App. 1993). DEED contends that this free-will-choice test was

5

abrogated by a 1997 amendment to the definition of "quit" under the unemployment-benefit statute, which remains the statutory definition of that term under the current statute. *See* Minn. Stat. § 268.095, subd. 2(a) ("A quit from employment occurs when the decision to end the employment was, at the time the employment ended, the employee's."); 1997 Minn. Laws Ch. 66, § 44, at 384.

DEED's argument is unpersuasive. DEED does not cite any authority for its assertion that the 1997 amendment to the definition of "quit" under the unemployment-benefit statute abrogated the free-will-choice test. It is clear that the two are consistent with each other. The free-will-choice test requires an employee to have made a free-will choice to leave employment. *Shanahan*, 495 N.W.2d at 896. The unemployment-benefit statute requires the employee to have made the decision to end the employee's employment for that employee to have quit. Minn. Stat. § 268.095, subd. 2(a).

Both standards for determining whether an employee quit the employee's employment require that the employee make the choice to end the employee's employment. While an involuntary separation of employment is a discharge under the unemployment-benefit statute, an employee's choice to end the employee's employment must be a free-will choice for the employee to quit employment. *See* Minn. Stat. § 268.095, subd. 5(a) (2014) ("A discharge from employment occurs when any words or actions by an employer would lead a reasonable employee to believe that the employer will no longer allow the employee to work for the employer in any capacity."). We conclude that the unemployment-benefit statute's definition of "quit" and the free-will-choice test are

essentially identical. The 1997 amendment to the unemployment-benefit statute did not abrogate the free-will-choice test.

*ULJ's Determination that Posey Quit*

DEED originally determined that Posey is ineligible for benefits because she was discharged for absenteeism, which amounted to employment misconduct. The ULJ determined that Posey had not been discharged for misconduct and, instead, had quit, based on the finding that "[Posey] chose not to return to work because she was overwhelmed" and that "[t]here was nothing US Bank or Securitas [did] which would have led a reasonable employee to believe she could no longer work for this employer in any capacity." In her order affirming her original determination, the ULJ noted that "Posey admitted to saying on March 11 that she could not work 40 hours per week at US Bank and that she would contact Securitas when she was ready for additional work." The ULJ emphasized that "[a]n intent to return to work in the future does not mean that the employment has not ended," and that on March 11, Posey "was clearly deciding that she cannot work at US Bank any longer."

Posey contends that she did not quit by telling Securitas that she needed time off to address her family's recent homelessness. She argues that instead, her "employer discharged her." DEED argues that the ULJ's finding that Posey quit is supported by substantial evidence because Posey herself stated that she "quit from the US Bank site" and that she "did resign from the US Bank site."

The record is sparse and does not include Posey's March 11 text message. This case is distinguishable from other cases where this court has upheld a ULJ's determination that

7

an employee quit because the employee's notice of resignation clearly showed the employee's intent to quit. *See, e.g., Stassen*, 814 N.W.2d at 31 (resignation email); *Seacrist v. City of Cottage Grove*, 344 N.W.2d 889, 892 (Minn. App. 1984) (resignation letter). Likewise, the record does not contain any employer policies that would have put Posey on notice that her actions would be construed as quitting employment from Securitas. *Cf. Nichols v. Reliant Eng'g & Mfg., Inc.*, 720 N.W.2d 590, 594 (Minn. App. 2006) (mentioning employer's policy that an absence of one day without notifying the employer constituted termination without notice). The record is largely limited to testimony at the June 30 hearing and Securitas's March 18 letter.

Posey testified that her March 11 text message to McGuire was meant to communicate that she could not then comply with U.S. Bank's attendance requirement and that she would contact McGuire when her family was situated. McGuire never responded to this text message. McGuire's testimony indicates that he believed Posey's text message was a resignation from Securitas. McGuire testified that Posey told him that she was going to live with family in Indiana and would not be able to make her shift moving forward. Posey disagreed with this testimony. Importantly, the ULJ did not rely on McGuire's testimony. The ULJ's order affirming her original decision notes that Posey stated that "she would contact Securitas when she was ready for additional work," which is inconsistent with McGuire's statement that Posey needed to "get back with her family out of state" and would not be able "to make her shift or any moving forward."

Posey testified, "I don't feel I was given a chance to go to another site or get on my feet and better my situation as far as they were concerned," and indicated that she believed

8

that Securitas "could have worked with [her] due to [her] unforeseen circumstances instead of letting [her] go." There is evidence in the record that Posey highly valued her job. For example, McGuire testified that Posey stressed "how important her job was" to her during their conversation on March 9. Posey consistently communicated with Securitas and U.S. Bank whenever she needed to take time off for medical reasons.

DEED argues that Posey's admissions that she quit from the U.S. Bank site provide "the requisite support for the ULJ's factual finding that Posey quit" and contends that "the terms of [Posey's] contract of employment were for Posey to work as a security guard at the US Bank Location." The ULJ's decision affirming her original determination relied on similar reasoning. We disagree. Posey did not "quit" employment at U.S. Bank in the statutory sense of the word. She was never "employed" by U.S. Bank. Posey was an employee of Securitas. She did not quit employment at Securitas under Minn. Stat. § 268.095, subd. 2(a) by attempting to leave her job assignment at U.S. Bank.

Posey's employment contract is not part of the record and DEED does not point to any authority for the proposition that an employee's attempt to resign from working for a client of an employer but continue working for the employer constitutes a decision by that employee to quit the employer. Minn. Stat. § 268.095 (2014 & Supp. 2015) is silent on this specific question, despite addressing certain applications of the unemployment-benefit statute to employees of staffing agencies. *See* Minn. Stat. § 268.095, subd. 2(d) (2014) (discussing conditions under which employee of staffing agency who completes a suitable job assignment is considered to have quit employment with the staffing service); *id.*, subd. 5(c) (2014) ("The end of a job assignment with the client of a staffing service is considered

9

a discharge from employment with the staffing service unless subdivision 2, paragraph (d), applies.").

An employee cannot quit under Minn. Stat. § 268.095, subd. 2(a), unless the employee makes the decision to end the employment. An employee cannot "unintentionally" quit employment. There is no evidence in the record that Securitas ever told Posey anything that would give her reason to believe that attempting to leave the U.S. Bank site would result in ending her employment with Securitas until the March 18 letter. The record also does not contain any evidence that Securitas had informed Posey at any point that an attempt to leave a client of Securitas for personal reasons would be seen as quitting from Securitas. There is not substantial evidence in the record to support the ULJ's finding that Posey quit employment with Securitas.

Securitas's March 18 letter was a notice of discharge. In these circumstances, it would lead a reasonable employee to believe that Securitas would no longer allow the employee to work for Securitas in any capacity. *See* Minn. Stat. § 268.095, subd. 5(a) (defining discharge as occurring "when any words or actions by an employer would lead a reasonable employee to believe that the employer will no longer allow the employee to work for the employer in any capacity"). The letter instructed Posey that her uniforms and access badges "must be returned," and informed Posey that she "quit with no notice which resulted in separation of employment." That is a discharge. There is not substantial evidence in the record that Posey made the decision to end her employment. Her employer, Securitas, ended her employment. Posey was discharged under Minn. Stat. § 268.095, subd. 5(a).

DEED originally determined that Posey had been discharged for absenteeism. This initial determination by DEED has no bearing on this case. Securitas has not made a claim of misconduct. There is no evidence in the record that Securitas had objected to Posey's previous requests for time off or that Securitas believed that it would have been employment misconduct for Posey to try to take time off to address her family's living situation.

## D E C I S I O N

In sum, there is not substantial evidence in the record to support the ULJ's determination that Posey made the decision to end her employment with Securitas. The ULJ erred in finding that Posey quit rather than was discharged. Posey was discharged. She is qualified to receive unemployment benefits. *See* Minn. Stat. § 268.095, subd. 4 (2014).

**Reversed.**