*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1470**

Jessica L. Coyne,
Relator,

vs.

Dollar General,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed June 15, 2026**
**Affirmed**
**Ross, Judge**

Department of Employment and Economic Development
File No. 51698583-4

Jessica Coyne, Cambridge, Minnesota (self-represented relator)

Dollar General, Minneapolis, Minnesota (respondent employer)

Melannie M. Markham, Keri A. Phillips, Katrina Gulstad, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

        Considered and decided by Bratvold, Presiding Judge; Ross, Judge; and Reilly, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**ROSS**, Judge

Jessica Coyne challenges the determination of the unemployment-law judge affirming the decision of the Minnesota Department of Employment and Economic Development that she is ineligible for unemployment benefits because she quit her employment. Because the record substantially supports the finding that Coyne quit employment, we affirm.

## FACTS

Jessica Coyne resigned from her manager position with Dollar General in April 2025. She had previously alleged that she had been injured on the job and sought workers' compensation benefits. Dollar General and Coyne entered into an agreement to settle her workers' compensation claim, and a term of that agreement was Coyne's stipulation to resign from her employment.

Coyne unsuccessfully applied for unemployment benefits. The Minnesota Department of Employment and Economic Development (DEED) determined that she is ineligible to receive benefits on the ground that she voluntarily quit her employment. Coyne appealed DEED's ineligibility determination to an unemployment-law judge (ULJ), who set the matter for an evidentiary hearing.

Coyne testified at the hearing that she sustained a work-related injury in 2017 and submitted a workers' compensation claim. She said that Dollar General had, for the next eight years, relieved her of certain job duties to accommodate the chronic effects of her injury. She said that Dollar General eventually changed her status from full-time to part-

2

time employment in 2025 when she presented it with a medical assessment limiting her to work no more than 4 hours daily and 20 hours weekly. According to Coyne, those workplace restrictions frustrated her supervisor, who commented that Dollar General intended to discharge her. She testified that her reduction in hours coupled with her supervisor's comment made her believe that she "was going to get fired" despite her never having been notified that Dollar General intended to discharge her. Coyne testified that she separated from Dollar General as a negotiated term of her workers' compensation settlement with the company.

The ULJ credited Coyne's testimony generally but discredited her assertion that Dollar General pressured her to quit. The ULJ found that Coyne had voluntarily quit her employment to reach the settlement, disqualifying her from receiving unemployment benefits. Coyne requested reconsideration, and a different ULJ affirmed the decision.

Coyne appeals by writ of *certiorari*.

## DECISION

We have liberally construed Coyne's argument on appeal as primarily contending that the record lacks substantial evidence that her resignation constituted a quit. When an unemployment-benefits applicant ends her employment because she quit her job, she becomes ineligible for unemployment benefits unless, among other exceptions, she quit for a reason directly related to her employment and for which her employer is responsible. Minn. Stat. § 268.095, subds. 1, 3 (2024). We will affirm the ULJ's decision unless it involves a constitutional, legal, or procedural infirmity or is arbitrary or capricious. Minn. Stat. § 268.105, subd. 7 (2024). We rely on a ULJ's factual findings that are substantially

3

supported by the record. *Fay v. Dep't of Emp. & Econ. Dev.*, 860 N.W.2d 385, 387 (Minn. App. 2015). And we review *de novo* whether the ULJ's factual findings support her ineligibility decision. *Posey v. Securitas Sec. Servs. USA, Inc.*, 879 N.W.2d 662, 664 (Minn. App. 2016). Applying this standard, we have no reason to reverse the ULJ's decision here.

We are not convinced by Coyne's contention that the record lacks substantial evidence that her resignation amounted to a quit. Because she acknowledges that she quit but focuses on her reasons for doing so, we construe her argument to say that the record proves that she quit for reasons caused by Dollar General. The difficulty with her argument is that we do not reweigh the ULJ's credibility findings, *see Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006), and the ULJ here found that Coyne quit her position voluntarily rather than because of Dollar General's alleged improper workplace pressure. The ULJ specifically found that she quit "only because of the worker's compensation settlement with Dollar General" and that she had "accepted the settlement offer . . . knowing that she would need to resign" as one of its terms. The ULJ was not persuaded that Coyne quit instead because of workplace retaliation for her injury complaints, observing that her "complaints about working conditions also occurred weeks or months before the employment ended." Coyne's testimony and the ULJ's credibility findings provide adequate support for the decision as to the reason for Coyne's unemployment.

If Coyne is arguing that her supervisor's behavior or alleged comment about termination so pressured her to resign that they amounted to a constructive discharge, the

argument fails. The operative statute provides that an employee quits if she receives notice of future discharge but "chooses to end the employment while [it] is still available." Minn. Stat. § 268.095, subd. 2(c) (2024). Coyne never received a discharge notice but agreed to separate while her position remained available. Our careful review of the record leads us to conclude that substantial evidence supports the ULJ's finding that Coyne quit voluntarily to accept the settlement agreement.

Coyne may be intending to argue that the circumstances of her resignation satisfy the medical-necessity exception to ineligibility. *See* Minn. Stat. § 268.095, subd. 1(7). But again, the ULJ found that Coyne voluntarily quit after knowingly agreeing to the separation term in the settlement agreement. And we limit our review to the ULJ's decision, Minn. Stat. § 268.105, subd. 7(a), which includes no finding that Coyne quit for any medical issues. Although it seems clear that medical issues might have led to the workers' compensation claim and eventual settlement, the ULJ recognized that these provided the context for, but were not the cause of, Coyne's separation.

**Affirmed.**